COMMISSIONER OF INSURANCE *vs.* BRISTOL MUTUAL
LIABILITY INSURANCE COMPANY.

Suffolk.   April 11, 1932. — May 20, 1932.

Present: RUGG, C.J., SANDERSON, FIELD, & DONAHUE, JJ.

*Equity Jurisdiction*, Receivership proceedings. *Receiver. Jurisdiction.
Supreme Judicial Court. Limitations, Statute of. Equity Pleading
and Practice,* Decree. *Insurance*, Mutual insurance company: assess-
ment. *Release. Words*, "Action of tort," "Action."

After the appointment of a receiver in proceedings by the commissioner
of insurance against a mutual insurance company which had issued
policies of insurance against liability for bodily injuries occurring
through the operation of motor vehicles, an interlocutory decree was
entered whereby the plaintiffs "in actions [for such injuries] now
pending, or hereafter to be entered against the policy holders" of the
defendant were enjoined "from proceeding with the prosecution" of
such actions; and by further decrees masters were appointed to deter-
mine such claims, proofs of which in a certain form were to be filed
with the receiver on or before a certain date. *Held*, that

(1) The first decree did not prohibit the mere bringing of actions for
such injuries against the defendant's policy holders;

(2) Claimants had a right to avail themselves of the additional
method provided by the decrees for settlement of their claims, and
by proceeding by that method they in substance were commencing
"actions" to enforce their claims within the provisions of the statute
of limitations, G. L. c. 260, § 4, in the amended form appearing in
St. 1929, c. 29, § 1;

(3) Such claimants as filed proofs of claim with the receiver within
a year after their causes of action had accrued were not barred by
such statute of limitations; but those claimants who did not so file
their claims or commence actions at law within such year were barred
by said statute.

The business of a certain mutual insurance company was carried on as a
unit without regard to the different kinds of policies issued, and there
was no by-law nor vote by the directors nor approval by the commis-
sioner of insurance for classification of policies to permit differences in
the rate of assessments upon the various policy holders, the only
by-law in that regard being one placing all the policy holders on the
same footing.   All policies of motor vehicle liability insurance were
written to expire in the year of their issuance, whereas policies of work-
men's compensation insurance were written for one, two or three years.
All obligations of the company with respect to the policies of work-
men's compensation insurance were fixed and either were paid or

secured to their full amount by the deposit of securities with the Treasurer and Receiver General. In receivership proceedings instituted when the company became insolvent, it was *held*, that

(1) A statement in the policies of workmen's compensation insurance, purporting to fix the policy holders' contingent liability on a basis different from that fixed in the policies of motor vehicle liability insurance, was unauthorized;

(2) No circumstances of "justice and equity" appeared to exonerate the holders of policies of workmen's compensation insurance from liability to assessment.

A general release, given by a mutual insurance company to one of its policy holders following settlement of a claim by the company for certain premiums, and covering all time up to its date, did not cover, and was not a bar to, an assessment upon the policy holder which became necessary in a receivership of the company nearly two years after the giving of the release.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 30, 1929, for the appointment of a receiver of the defendant.

A receiver was appointed. He subsequently filed a petition for the imposition of an assessment upon the defendant's policy holders under G. L. c. 175, § 84. The questions described in the opinion thereupon were reported by *Sanderson*, J., for determination by the full court.

*A. R. Shrigley*, for the receiver.

*R. Wait*, for Columbia Granite Works and others.

*F. S. Malouf*, for Mary Maloof.

*J. J. Caffrey*, for Cambridge Taxi Company.

RUGG, C.J. This is a proceeding for the winding up of the defendant by means of a receivership. Three questions of law have been reserved for our determination upon a petition by the receiver under G. L. c. 175, § 84, for an assessment.

1. The first question is this: "Are persons who sustained bodily injuries giving rise to causes of action against motor vehicle policy holders in the respondent insurance company, but who had not commenced action on account thereof within one year after said causes of action had accrued, and who had sought to prove their claims founded upon said causes of action in this receivership proceeding, entitled to prove the same and share in the distribution of assets by the receiver?" The pertinent facts disclosed by

the printed record and by copies of papers on file concerning this class of claims are these: The receiver was appointed on November 6, 1929. An interlocutory decree was entered on November 15, 1929, whereby it was ordered that until the further order of the court all plaintiffs and all attorneys representing plaintiffs "in actions now pending, or hereafter to be entered against the policy holders" of the defendant to recover for injuries to persons or for damages to property alleged to have been caused by automobiles of such policy holders, "are enjoined from proceeding with the prosecution" and from taking any steps in furtherance of such actions; and that the receiver notify all claimants "irrespective of whether or not their claims are in litigation" by mailing them copies of the decree. The receiver and his counsel were appointed special masters by interlocutory decree of February 7, 1930, to hear and determine claims. By the same decree it was ordered that proofs of claims of all classes should be filed with the receiver on or before March 15, 1930, and the receiver was directed to notify in writing, postage prepaid, all persons having claims against those insured in the defendant or against the defendant to deliver proofs of claims to the receiver on or before March 15, 1930. In addition, general public notice as to the proof of claims was required to be printed in newspapers published in four cities in the Commonwealth. Claimants for injuries to person were required to use a form of proof attached to the decree. That form set out in great detail the time, place, circumstances, nature and extent of the injuries, the names of witnesses, and other information pertinent to the alleged injuries. The proof was required to be under oath. The special masters in their report set out in one schedule a list of those claimants who had failed to commence actions of tort in the usual way for bodily injuries alleged to have been sustained by them, or for the deaths of their intestates within one year next after their causes of action accrued, and where that period expired after the appointment of the receiver, together with the damages assessed in favor of each claimant. The first question relates to these claims.

The relevant statute of limitations is St. 1929, c. 29, § 1, amending G. L. c. 260, § 4 (see now St. 1931, c. 458, § 5). So far as here material, its words are: ". . . actions of tort for bodily injuries or for death the payment of judgments in which is required to be secured by chapter ninety . . . shall be commenced only within one year next after the cause of action accrues."

The general rule is that when the period prescribed by a statute of limitations has begun to run, it will continue to run even though a receiver has been appointed and an injunction has issued against the bringing of actions against the receiver. *Paul* v. *Fidelity & Casualty Co.* 186 Mass. 413. *Cain* v. *Seaboard Air-Line Railway,* 138 Ga. 96, 98. *Williams* v. *Taylor,* 99 Md. 306. *Harrison* v. *Dignan,* 1 Con. & Laws. 376, 378. In case such peremptory injunction has issued against the bringing of actions against the receiver or against the owner of the property of which he is receiver, the holder of a claim liable to be tolled by the statute of limitations may seek relief by petitioning the court which appointed the receiver and issued the injunction for leave to bring an action at law or suit in equity, and to modify the injunction accordingly, or for leave to file an intervening petition for the establishment of his claim. *Boston* v. *Turner,* 201 Mass. 190, 195. *Old Colony Trust Co.* v. *Medfield & Medway Street Railway,* 215 Mass. 156.

The interlocutory decree of November 15, 1929, did not according to its true interpretation prevent the bringing of actions against tortfeasors insured by the defendant. It simply enjoined plaintiffs and their attorneys from pursuing their actions against such tortfeasors (1) in pending actions already brought and (2) in actions "hereafter to be entered." There is no clause or paragraph in that decree forbidding the institution as a new proceeding and the entry in court of actions of that nature. The use of the word "plaintiffs" in that decree imports applicability only to actions already actually instituted: it excludes persons who had not sued out writs or begun court proceedings. The words "hereafter to be entered" in that decree plainly imply the future entry in court of actions, not a prohibi-

tion of such future entry. These considerations are not decisive against these claimants.

The receiver in the case at bar was appointed to take charge of a mutual insurance corporation for the purpose of winding it up. The proceeding was essentially for the benefit of all persons in interest, and especially for the advantage of those insured, claims against whom had not been settled, and those policy holders liable to be assessed to meet the payment of those claims. The court had plenary power to proceed according to law to ascertain the amounts due to all claimants. It had jurisdiction of that subject. Within reasonable limits and in accordance with law the court was clothed with power to fix the time and manner of ascertainment of damages sustained by the claimants. *Suffolk Knitting Mills* v. *Cosmopolitan Trust Co.* 252 Mass. 394. The court undertook by the interlocutory decree of February 7, 1930, to establish the method by which claimants might assert their claims, to fix the time within which their statements of claims must be presented, and to provide a special tribunal for the assessment of their damages. The receiver was the officer of the court for the purpose of receiving proofs of claims. This was all in the interests of economy, both to the court and to all parties in interest, and of a speedy settlement in a just way of many claims. Claimants had a right, even if not required, to avail themselves of the legal machinery thus provided. The claimants who complied with this decree and in accordance therewith presented and established their proofs of claim were proceeding according to law under the direction of a court of equity of competent jurisdiction to assert their rights. Those who followed this course within the period limited by the statute of limitations are not barred by that statute. They were in substance and effect commencing actions in court to enforce their causes of action. "Action of tort," as those words are used in the governing statute already quoted, in a wide sense mean the pursuit of the right in the appropriate court of justice without regard to the precise form of procedure. "Action" is not infrequently used in this comprehensive sense in the

statutes. *Boston* v. *Turner*, 201 Mass. 190, 196, and cases cited. *Pigeon's Case*, 216 Mass. 51, 56. "'An action' is defined to be 'a lawful demand of a man's right.' Co. Lit. 285*a*." *Valentine* v. *Boston*, 20 Pick. 201, 203. See also *Kirkpatrick* v. *McElroy*, 14 Stew. (N. J.) 539, 555; *Forman* v. *Brewer*, 17 Dick. (N. J.) 748, 750; *Ludington* v. *Thompson*, 153 N. Y. 499, 505. Strong considerations of justice support this conclusion. The report of the auditor appointed under G. L. c. 175, § 84, respecting this class of claims, is that the awards of the special masters, "on account of accident claims on which no action had been brought in court within one year from the date on which the accident occurred," have been confirmed by the court and that these claimants "appeared before the special masters in the belief that they were properly before them for the adjudication of their claims. It would therefore appear to be inequitable to disallow these claims, and I so report to the court as my finding."

There is nothing inconsistent with this conclusion in cases like *Bickford* v. *Furber*, 271 Mass. 94; *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82, and *DeCosta* v. *Ye Craftsman Studio Inc.* 278 Mass. 315, where the statute of limitations here invoked was given a necessarily rigid interpretation. If, however, there are claimants who did not file their proofs of claims with the receiver within one year after their causes of action accrued, they are barred by the statute. Such claimants have not commenced any actions in the courts to enforce their causes of action.

The answer to the first question is that the persons who, within one year after their causes of action had accrued, filed proofs of claims with the receiver are not barred by the statute; but persons who did not either file proofs of claims with the receiver or sue out writs at law and seasonably prosecute the same as far as permitted by the court are barred by the statute.

2. The second question is this: "On the facts found by the auditor are the holders of policies of workmen's compensation insurance issued by the respondent insurance company liable to assessment for the discharge of those

obligations of the respondent insurance company reported by the auditor as now outstanding and unpaid and for the payment of which the receiver by his said petition requests the imposition of an assessment?" Facts relevant to this question are these: The defendant was incorporated on October 22, 1926, under the general laws of the Commonwealth to transact on the mutual plan classes of insurance business specified in G. L. c. 175, § 47, Sixth, (see St. 1927, c. 284, §§ 6, 17). No assessment ever has been laid upon policy holders, but one now is necessary. All obligations of the defendant on account of policies issued by it for workmen's compensation insurance are fixed and have been paid or are secured to their full amount by securities deposited with the Treasurer and Receiver General. All motor vehicle insurance policies were written to expire on the thirty-first day of December of the years in which they issued, while workmen's compensation policies were written for one, two or three years from the dates of the policies. The provisions concerning premiums and contingent liability set forth in policies issued for motor vehicle insurance are different from those in the policies issued for workmen's compensation insurance. The contingent liability of holders of policies for motor vehicle insurance was stated in the policies not to exceed an amount equal to and in addition to the premium written in the policies; that of holders of policies for workmen's compensation insurance was stated in the policies to be for a sum not to exceed an amount equal to twice the cash premium written in the policies, in addition to such premium. The single by-law of the defendant relating to the contingent liability of policy holders applies to all alike and provides that such liability of the insured shall be for a sum equal to and in addition to the cash premium written in the policies. No different provision is made for holders of policies for workmen's compensation insurance in this or any other by-law, and none authorizes the contingent liability specified in the workmen's compensation policies. There was no vote by the directors authorizing separate classes of policy holders, either by groups of different kinds of insurance, or within

any group.  Payments of claims arising under workmen's compensation insurance "were all made from the common fund contributed by all of the policy holders, more particularly those holding policies of motor vehicle insurance." Premiums paid by holders of workmen's compensation policies were not segregated; all expenses applicable to such business were paid from the common fund.  Separate sets of books were not kept.

The directors of the defendant were authorized, subject to the written approval of the commissioner of insurance, to fix and determine by vote the percentages of dividend or expiration return of premium to be paid on expiring or canceled policies, which might be different for policies insuring different kinds of risks.  Further provision was made by statute to the effect that "If an assessment is levied under section eighty-three the rate thereof may be different for policies insuring risks in any classification from that for policies insuring other classifications of risks . . . ." Every policy placed in any such classification "shall, when issued, bear an endorsement, satisfactory to the commissioner, to the effect that it is so classified."  G. L. c. 175, §§ 80, 81, 83, 84, 90.  St. 1921, c. 160.  St. 1927, c. 284, § 11.  St. 1929, c. 34, § 1.  (See St. 1931, c. 62.)  Provision was made by § 113B, inserted in G. L. c. 175 by St. 1925, c. 346, § 4, and amended by St. 1927, c. 182; St. 1928, c. 381, § 6; St. 1929, c. 34, § 2, and c. 166, for public regulation and classification of rates for motor vehicle liability insurance. That is directed to a different end from the classification of assessments authorized by G. L. c. 175, § 80, as amended.

It is plain from the facts already narrated that the defendant did not make any such classifications as are essential under the governing statutes to permit differences in the rates of assessments upon policy holders.  No by-law to that effect was adopted.  On the contrary, the only by-law put all policies on the same footing.  No vote of the directors for that purpose was passed.  There were no classifications in fact of the different kinds of business transacted by the defendant.  There was, of course, no approval by the commissioner of such classifications and no indorsement to that

effect on the policies.  All the receipts went into a common fund and all losses and expenses were paid out of that common fund.  The books of the defendant were kept on the basis of a single kind of business commingled as to every essential aspect.  The differences as to the terms of policies and the fact of actual payment of workmen's compensation insurance losses are matters of indifference to the question here to be decided.  The double contingent liability specified in policies of workmen's compensation insurance was not authorized.  In this respect the contingent liability is on the same basis for all policies.  All the policy holders in the defendant knew that they were taking insurance in a mutual company.  Liability to assessment for losses is one of the incidents of insurance of that kind.  No circumstances of "justice and equity" (G. L. c. 175, § 84) are apparent on this record to exonerate the policy holders of workmen's compensation insurance from the liability to assessment assumed by them.  The case at bar in its facts is different from *Citizen's Mutual Fire Ins. Co.* v. *Sortwell,* 8 Allen, 217, and the governing statutes are not those then in force.

It follows that the second question must be answered in the affirmative and that all policy holders must be assessed upon the same general principle.

3.  The third question is this:  "On the facts found by the auditor relating to a general release given to Cambridge Taxi Company, was said Cambridge Taxi Company as a holder of a policy issued by the defendant insurance company released and discharged from any liability to an assessment?"  The facts respecting this point as found by the auditor in substance are these:  The Cambridge Taxi Company was a policy holder in the defendant from January to October, 1927.  Thereafter, the defendant made claim against the Cambridge Taxi Company for excess mileage premiums in a substantial sum.  Suit was brought and settled, and the Cambridge Taxi Company paid to the defendant $2,300 and obtained a general release of all demands signed on behalf of the defendant by its treasurer and bearing the corporate seal.  This release was in the usual form and the time covered by its words was from the

beginning of the world to the date of the release in December, 1927. There was no vote of the directors authorizing the release and no specific reference in the release to an assessment such as here involved.

The release was dated almost two years before the appointment of the receiver of the defendant. It is manifest that the subject of assessment of the policy holder had not arisen at that time. While liability to assessment on the Cambridge Taxi Company was a potentiality, the possibility of it was actually in the future. It could not have been in the minds of the parties when the release was executed. "But a release of a future demand, not then in existence, is void." *Hastings* v. *Dickinson,* 7 Mass. 153, 155. A guaranty to a policy holder of such a company as the defendant against such assessment by an officer thereof constitutes a criminal act and is void. G. L. c. 175, § 85. Every presumption is contrary to the contention that the release was intended when given to be a bar to an assessment such as has now become necessary. There is nothing in the facts reported by the auditor to justify the contention that liability to the assessment is barred by the release.

The third question is answered in the negative.

*Ordered accordingly.*