SWORD & SHIELD RESTAURANT, INC. *vs.* AMOCO OIL
COMPANY; RAYMOND S. LEE, third-party defendant.

Essex.   April 16, 1981. — May 13, 1981.

Present: BROWN, CUTTER, & KASS, JJ.

*Release.   Contract,* Release from liability.

A release by which an oil company discharged its service station tenant
from "all claims . . . of any kind whatsoever . . . whether known or
unknown, which it now has, ever had, or hereafter may claim to have
had, from the beginning of time to the date hereof" operated to dis-
charge the company's claim for contribution against the tenant as a
joint tortfeasor in an incident which occurred six days prior to the date
of the release even though the existence of the tort claim may not have
been known to the company when it gave the release and even though
the company's cause of action for contribution did not arise until the
company paid the judgment on the tort claim some time after the
release. [832-834]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 25, 1979.

The case was heard by *Bennett, J.,* on motion for sum-
mary judgment.

*Ronald E. Harding* for Amoco Oil Company.

*Edward M. Mahoney* for Raymond S. Lee.

KASS, J.   1.   As to the primary issue argued by the parties,
the instant case is controlled by *Naukeag Inn, Inc.* v. *Ride-
out,* 351 Mass. 353, 356 (1966), which held that broad
general releases drawn "in terms sufficiently comprehen-
sive" discharge all existing claims, whether disclosed or un-
disclosed.   Here the release which Amoco Oil Company
(Amoco) gave to its service station tenant, Raymond S. Lee
(Lee), discharged Lee from "all claims . . . of any kind
whatsoever . . . whether known or unknown, which it now
has, ever had, or hereafter may claim to have had, from the

beginning of time to the date hereof . . . ." To the extent
that the release referred to the resolution of the particular
dispute then being resolved, it did so expressly "without
limiting the generality of the foregoing." If exceptions to
the release were intended, they should have been stated. See
*Radovsky* v. *Wexler*, 273 Mass. 254, 258 (1930); *Naukeag
Inn, Inc.* v. *Rideout*, 351 Mass. at 356; *LaFontaine* v.
*Fillela*, 7 Mass. App. Ct. 870, 871 (1979). Contrast *Com-
missioner of Ins.* v. *Bristol Mut. Liab. Ins. Co.*, 279 Mass.
325, 333-334 (1932).

2. It is no answer to the application of the familiar prin-
ciples restated above to say that the claim for contribution
which Amoco seeks to press against Lee did not mature until
that date, after the release, upon which Amoco paid a judg-
ment on a tort claim to Sword & Shield Restaurant, Inc.
(Sword & Shield). Although it is Amoco's position that it
could not bring an action against Lee for contribution until it
had paid more than its share of Sword & Shield's claim, that
action would have "its roots in the underlying incident which
gives rise to the personal injury." *Coulson* v. *Larsen*, 94 Wis.
2d 56, 59-60 (1980). So while a cause of action for contribu-
tion may not be ripe until a joint tortfeasor has paid more
than his share of a judgment, the inchoate right to contribu-
tion comes into being when the "underlying incident" occurs.
See *Markey* v. *Skog*, 129 N.J. Super. 192, 200 (1974). Here
the underlying incident involved a leaking gasoline storage
tank from which gasoline seeped into Sword & Shield's base-
ment, an event which occurred six days before Amoco and
Lee exchanged releases. Although the existence of Sword &
Shield's claim may not have been known to the persons who
signed and delivered the release of Lee on behalf of Amoco,
that release by its terms included "all claims, demands,
causes of action, and liabilities of any kind whatsoever (upon
any legal or equitable theory, whether contractual, common
law, statutory, federal, state or otherwise) *whether known or
unknown* . . ." (emphasis supplied).

Moreover, G. L. c. 231B, § 4(b), inserted by St. 1962,
c. 730, § 1, provides that, "[w]hen a release . . . is given in

good faith to one of two or more persons liable in tort for the same injury . . . [i]t shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." The releases, incident to settlement, referred to are prejudgment releases. See *Bishop* v. *Klein*, 380 Mass. 285, 292-295 (1980). The statute refers to prejudgment releases of a tortfeasor by a claimant. The case for honoring a release by which one joint tortfeasor, as here, discharges the other is even stronger since the rights of parties are not in any way established by the actions of a third party. We recognize that the legislative purpose behind c. 231B is to avoid having one of two or more joint tortfeasors bear a disproportionate share of a plaintiff's recovery. *Hayon* v. *Coca Cola Bottling Co.*, 375 Mass. 644, 648 (1978). It does no violence to that objective of equitable distribution of tort burdens, however, to allow tortfeasors, *among themselves*, to release one of their number. See generally 12 U.L.A. § 4, Comment of the National Conference of Commissioners on Uniform State Laws, at 99-100 (Master ed. 1975).

*Judgment affirmed.*