**A. SHAPIRO & SONS, INC., Plaintiff,**

v.

**RUTLAND WASTE & METAL COMPANY, et al., Defendants.**

No. Civ.A. 98–30107 KPN.

United States District Court, D. Massachusetts.

Nov. 19, 1999.

Daniel R. Solin, Pittsfield, MA, for A. Shapiro & Sons, Inc.

Michael E. Scott, Kristine E. George, Warner & Stackpole, Boston, MA, Theodore F. Haussmann, Jr., John M. Armstrong, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Michael DeMarco, Kirkpatrick & Lockhart, LLP, Boston, MA, for Rutland Waste & Metal Company, Sears–Roebuck & Co.

John A. Agostini, Pittsfield, MA, for Philip Apkin.

Thomas Frisardi, Adam D. Rogoff, Peabody & Arnold, LLP, Boston, MA, for Morris Alpert.

*MEMORANDUM WITH REGARD TO SUMMARY JUDGMENT MOTIONS OF DEFENDANTS SEARS ROEBUCK & CO., RUTLAND WASTE & METAL COMPANY AND MORRIS ALPERT D/B/A NORTH ADAMS JUNK CO. (Docket Nos. 44 and 56)*

NEIMAN, United States Magistrate Judge.

This case centers around a multi-million dollar cleanup of the Marjol Battery and Equipment Co. ("Marjol") in Throop, Pennsylvania. In April of 1999, following a lengthy trial in the United States District Court for the Middle District of Pennsylvania, A. Shapiro & Sons, Inc. ("Plaintiff"), one of several hundred defendants in that case, was found liable for an approximately $60,000 share of the cleanup costs. At issue here is whether Plaintiff's present action for contribution from and indemnification by Sears, Roebuck & Co. ("Sears"), Rutland Waste & Metal Company ("Rutland") and Morris Alpert d/b/a North Adams Junk Co. ("Alpert") (collectively "Defendants") is ripe given that Plaintiff has not yet paid the judgment and, therefore, may not have "incurred" any response costs as required by statute. This issue is raised in the context of Defendants' motions for summary judgment. With the parties' consent, the matter has been assigned to the court for all purposes pursuant to 28 U.S.C. § 636(c).

Because the court agrees with the moving Defendants that Plaintiff's complaint is premature, it will dismiss the complaint against them without prejudice. The court, *sua sponte*, will apply this dismissal to Philip Apkin ("Apkin") as well, the only remaining defendant.[1]

## I. *BACKGROUND*

The court states the facts and reasonable inferences derived therefrom, consistent with the record, in a light most favorable to Plaintiff, the non-moving party. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir.1999).

In 1961, Marjol opened a battery breaking facility in Throop, Pennsylvania. Plaintiff had an ongoing business relationship with Marjol in the 1960s and 1970s to gather junk lead-acid batteries in the North Adams, Massachusetts, area and sell them to Marjol. In 1980, Gould, Inc. ("Gould") purchased the Marjol facility and operated it for one year before shutting it down. Six years later, the Environmental

1. A fifth defendant, Montgomery Ward & Co. ("MWC"), was dismissed from the case on April 16, 1999, without objection by any party, after it was reported that MWC was in bankruptcy proceedings. (*See* Docket No. 38.)

Protection Agency ordered Gould to remediate the site.

In 1991, Gould commenced an action in the Middle District of Pennsylvania against several hundred battery suppliers and other potentially responsible parties seeking contribution for its cleanup costs. *See Gould, Inc. v. A & M Battery and Tire Co.,* U.S.D.C., M.D. Pa., Civil Action No. 91–1714. After settling with many of the defendants in that action, Gould commenced a six week trial in February of 1997 against the remaining thirty-eight defendants, one of which was Plaintiff. On April 13, 1999, Plaintiff was adjudged liable and ordered to pay Gould a judgment for remedial costs at the Marjol site in the amount of $59,849.26 plus interest. Plaintiff's liability derived from its arranging the disposal of battery lead at the Marjol site in the 1960s and 1970s. Plaintiff indicates that it also "remains liable for future response costs, to be determined at further proceedings in the underlying action." (Docket No. 54 at 1.) In June of 1999, Burton Shapiro, Plaintiff's president and sole owner, testified at his deposition in the present matter that he intended to pay the judgment, but that he did not have the funds at the time. He stated that he would like to pay the judgment "tomorrow" and that it was his intention to pay it within the next year.

One other lawsuit casts its shadow here as well. In 1996, Gould commenced a satellite cost-recovery action in the Middle District of Pennsylvania against, *inter alia,* Sears and Rutland. *See Gould v. Bergen Metals,* U.S.D.C., M.D. Pa., Civil Action No. 96–0661. In that complaint, Gould alleged that Sears entered into a relationship with Sam Kassab ("Kassab"), a battery "peddler" in Pennsylvania (*see* Docket No. 61, Ex. A at 2), whereby Sears arranged, through Kassab, for the disposal

or treatment of hazardous substances at the Marjol site. Sears and Rutland eventually settled their Kassab-based liability with Gould and, in 1997, were dismissed from the action.[2]

In June of 1998, Plaintiff instituted the present contribution action against Sears, Rutland, Alpert, Apkin and MWC in relation to Plaintiff's liability in the *Gould v. A & M Battery* case. The facts alleged against each of the defendants differ somewhat. As to Rutland, Plaintiff alleges that, between 1967 and 1979, Rutland provided nearly three million pounds of batteries to Plaintiff for transport to Marjol. Regarding Apkin, the complaint alleges that, in 1967, Apkin sold Plaintiff approximately forty-eight thousand pounds of batteries.

The amount of batteries allegedly sold by Sears to Plaintiff for transport to Marjol, on the other hand, is unstated in the complaint. Sears asserts, however, without objection by Plaintiff, that all the batteries it sold Plaintiff came from its Sears store in North Adams (as opposed to the Pennsylvania Sears stores at issue in *Gould v. Bergen Metals*). At his deposition, Burton Shapiro testified that he never discussed with any Sears representative what he intended to do with the North Adams batteries once he purchased them.

With regard to Alpert, Burton Shapiro testified that, in 1967, he arranged for a Marjol truck to pick up two truck-loads of batteries from Alpert, eighty-eight thousand pounds worth, and that the batteries were loaded onto the trucks by Plaintiff's employees. Although Plaintiff does not have any records of having paid Alpert, Shapiro asserts that payments were made and that Alpert received approximately eighty-two percent of the revenues remitted by Marjol, or about three thousand dollars.

---

**2.** Plaintiff has called the court's attention to the fact that the complaint in *Gould v. Bergen Metals* was signed on behalf of Gould by the same counsel representing Sears in the present action. When Plaintiff raised the issue of a potential conflict of interest on the part of

Sears' counsel at a pretrial conference on July 27, 1999, the court gave Plaintiff the opportunity to file a motion with respect to that claim by August 20, 1999. Plaintiff thereafter decided not to pursue such a motion.

The instant complaint sounds in two counts. Count I alleges that all Defendants are liable for contribution pursuant to section 113(f)(1) of the Comprehensive Environmental Compensation, Response and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1). Count II asserts that each defendant is liable for contribution and indemnification under "applicable Massachusetts law." The complaint also seeks, albeit not in a specifically-enumerated count, a declaratory judgment asserting its right to recover past and future contributions from Defendants in connection with the Marjol site.

Following Burton Shapiro's deposition in June of 1999, Sears and Rutland moved for summary judgment. (Docket No. 44.) Briefing on Sears and Rutland's motion was completed on October 21, 1999, and the court heard argument on October 25, 1999. At the same time, the court heard argument on Alpert's motion for summary judgment filed on September 27, 1999. (Docket No. 56.) Apkin, with whom Plaintiff is prepared to settle but for Alpert's resistance to dismiss a cross-claim against Apkin, has chosen to remain silent.

## II. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment pursuant to Fed.R.Civ.P. 56(c) if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue. *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). A "genuine" issue is one "that a reasonable jury could resolve ... in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). *Accord United States v. One Parcel of Real Property, Great Harbor Neck, New Shoreham, R.I.,* 960 F.2d 200, 204 (1st Cir.1992).

Not every genuine factual conflict, however, necessitates a trial. " 'It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared.' " *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (quoting *Martinez v. Colon,* 54 F.3d 980, 983–84 (1st Cir.1995)).

## III. DISCUSSION

Three of the defendants, Sears, Rutland and Alpert, argue first that, because Plaintiff has admitted that it has not yet paid any money for which it seeks contribution, its causes of action are not ripe and, therefore, summary judgment should be granted in their favor. Two of the defendants, Sears and Alpert assert in the alternative that their lack of knowledge concerning Plaintiff's destination for disposing of their batteries allows them to escape liability under the "indirect seller" doctrine. Finally, Alpert contends that he should be free of liability under equitable principles recently enunciated by the First Circuit in *Acushnet Co. v. Mohasco Corp.,* 191 F.3d 69 (1st Cir.1999), since he contributed an insignificant amount of hazardous materials to the Marjol site. Because the court agrees with Defendants' first argument, that the case is premature and should be dismissed without prejudice, it does not analyze in any detail the alternative "indirect seller" and *Acushnet* claims.

### A.

As a preliminary matter, the court rejects Plaintiff's assertion that Sears and Rutland's motion should be denied for their alleged failure to comply with Local Rule 56.1's requirement that they file with their motion a concise statement of material facts to which they contend there is no genuine issue to be tried. After Plaintiff initially raised this concern, Sears and Rutland filed an L.R. 56.1 statement to which Plaintiff had an adequate opportunity to respond.

## B.

"The purpose of CERCLA is to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes." *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 171 F.3d 1065, 1068 (6th Cir.1999) (citation and internal quotation marks omitted). *See also In re Hemingway Transport, Inc.*, 993 F.2d 915, 934 (1st Cir.1993). Section 107(a)(4)(B) of CERCLA provides a private cause of action for the recovery from responsible parties of "necessary costs of response incurred." 42 U.S.C. § 9607(a)(4)(B). In turn, section 113(f)(1) of CERCLA states that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a) ]." 42 U.S.C. § 9613(f)(1).

■ As District Judge Michael A. Ponsor recently explained, to recover costs under the above described CERCLA provisions "a plaintiff must have actually incurred response costs." *Lewis v. Gen. Elec. Co.*, 37 F.Supp.2d 55, 62 (D.Mass. 1999) (citing 42 U.S.C. § 9706(a)(4) and *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1157 (1st Cir. 1989)). Faced with a plaintiff who, as is true here, conceded that she had not yet incurred any such costs, Judge Ponsor dismissed her claim for contribution as premature without prejudice to her reasserting it when and if she did incur such costs. *Id. See also United Technologies Corp. v. Browning–Ferris Indus.*, 33 F.3d 96, 99 (1st Cir.1994) (noting that CERCLA allows non-innocent parties to seek "recoupment" of their "expenditures" which exceed their pro rata share of the overall liability); *Trimble v. Ascaro, Inc.*, No. 8:97–428, slip op. at 6–7, 12 (D.Neb. May 20, 1999) (finding that plaintiffs who have not personally spent any money for investigation or remediation have "incurred" no liability and no response costs under § 9607(a)).

■ The policy behind the incurrence rule is clear: "actual cleanup is encouraged by requiring plaintiffs to incur response costs before they can recover them. Since CERCLA places no strings on the award of response costs, allowing recovery for future costs absent any binding commitment to incur these costs would leave no incentive to complete the cleanup." *In re Dant & Russell, Inc.*, 951 F.2d 246, 250 (9th Cir.1991) (citations omitted). The incurrence of expenses is also a necessary element for bringing a ripe contribution claim under Massachusetts law. *See, e.g., Robertson v. McCarte*, 13 Mass.App.Ct. 441, 433 N.E.2d 1262, 1263 n. 1 (1982) (noting that "payment by the plaintiffs is a prerequisite to their action for contribution"); *Sword & Shield Restaurant, Inc. v. Amoco Oil Co.*, 11 Mass.App.Ct. 832, 420 N.E.2d 32, 33 (1981) ("a cause of action for contribution may not be ripe until a joint tortfeasor has paid more than his share of a judgment").

In light of this clear precedent, Defendants argue that the entire case should be dismissed as premature because Plaintiff has not yet "incurred" any response costs, not having paid the $59,849.26 judgment entered against it in *Gould v. A & M Battery*. Not surprisingly, Plaintiff concedes that the contribution and indemnification claims, the only two counts specifically enumerated, should be dismissed, "without prejudice," (Docket Nos. 51 and 58). The court will not only accommodate this concession, but it will *sua sponte* dismiss, again without prejudice, Counts I and II as they apply to Apkin since the incurrence argument applies to him as well. Still, the question remains whether Plaintiff, as it claims, is nonetheless entitled to maintain this case as a declaratory judgment action without first having to pay any response costs. As explained below, the court answers that question in the negative.

## C.

The parties' arguments with respect to the availability of declaratory relief have

several components. Each of these will be addressed in turn.

### 1.

The court first addresses Sears and Rutland's assertion that, because no declaratory judgment "count" was actually pled in the complaint, declaratory judgment issues should not be considered. (Docket No. 52 at 3.) As the court observed at oral argument, however, Plaintiff adequately sought declaratory relief in both the first paragraph of the complaint and a separate prayer. *See* Fed.R.Civ.P. 8(a). The court thus proceeds to the merits of the parties' respective declaratory judgment arguments.

### 2.

■ Section 113(g)(2) of CERCLA provides for declaratory relief under certain circumstances. In applicable part, it states that, in actions under § 107, "the court shall enter a declaratory judgment on liability for response costs ... that will be binding on any subsequent action or actions to recover further response costs." 42 U.S.C. § 9613(g)(2). The question posited here is whether, under section 113(g)(2), a plaintiff can seek a declaratory judgment, as distinct from contribution or indemnification, without first incurring response costs. Because no party has cited any Supreme Court, First Circuit or District of Massachusetts case addressing this issue, the court has looked to case law from other jurisdictions. The clear answer derived therefrom is that the incurrence of response costs is a prerequisite to declaratory relief.

Nearly every case cited by the parties agrees, as does this court, that some funds must be spent on response costs prior to a declaratory judgment action being considered ripe. The Ninth Circuit, for example, has indicated that both sections 113(g)(2) and 107(a) "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard." *In re Dant & Russell,* 951 F.2d at 249. Then, and only then can CERCLA plaintiffs "go to court and obtain ... a declaration that the responsible party will have continuing liability for the cost of finishing the job." *Id.* at 249–50. "By requiring a plaintiff to take some positive action before coming to court," the Ninth Circuit explains, "CERCLA ensures that the dispute will be ripe for judicial review." *Id.* at 250 (holding that bankruptcy court could not enter judgment for $7,402,564 under § 107(a) for "incurred" costs when such costs had not been incurred). *See also Trimble, supra,* slip op. at 10 (citing *In re Dant & Russell* ); *Marriott Corp. v. Simkins Indus., Inc.,* 825 F.Supp. 1575, 1582 n. 14 (S.D.Fla.1993) (allowing declaratory judgment "[b]ecause an expenditure has been made"); *Bowen Eng'g v. Estate of Reeve,* 799 F.Supp. 467, 476 (D.N.J.1992) (holding that declaratory relief only appropriate once some expenditure has been made toward necessary response costs), *aff'd,* 19 F.3d 642 (3d Cir.1994); *United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823, 852 (W.D.Mo.1984) (plaintiff entitled to declaratory judgment where "it has already incurred thousands of dollars in costs"), *rev'd on other grounds,* 810 F.2d 726 (8th Cir.1986). *Cf. Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437, 1444 (S.D.Fla. 1984) (denying declaratory relief where plaintiff had not yet obtained governmental approval of its cleanup proposal).

In response, Plaintiff relies on a single case, albeit one with several published opinions, to support its contention that it should be allowed to proceed towards declaratory relief without having to pay response costs. In that case, *United States v. Davis,* 31 F.Supp.2d 45 (D.R.I.1998), United Technologies Corporation ("UTC"), the declaratory judgment plaintiff, had voluntarily entered into a consent decree with the United States whereby it had agreed to pay $2.8 million for past response costs and to assume responsibility for implementing soil remediation, estimated to cost $14 million. *Id.* at 69. UTC then joined the United States in seeking court approval of the consent decree. *See United*

*States v. Davis,* 11 F.Supp.2d 183, 187 (D.R.I.1998). In thereafter allowing UTC to seek contribution, the Davis court assumed that UTC would in fact incur the response costs it committed to pay in its consent decree with the United States. The court also noted that "it is relatively easy to estimate the costs that UTC almost certainly will be required to incur in the future." *United States v. Davis,* 20 F.Supp.2d 326, 338 (D.R.I.1998). Even then, it was a "perilously close" question as to whether declaratory relief was available. *Id.,* 31 F.Supp.2d at 59.

As Sears and Rutland point out, the *Davis* court's "assumption was probably reasonable given the requirement that UTC provide financial assurance to the United States that it had financial resources to perform the remedy as a condition of the settlement agreement. *See* 40 C.F.R. Part 264.143(f)." (Docket No. 52 at 7.) Here, in contrast, Plaintiff has provided absolutely no assurance that it has the financial resources to pay the $59,849.26 judgment. Granted, Burton Shapiro testified that he would like to pay the judgment "tomorrow" and that it was his intention to pay it within the next year. (Docket No. 54 at 1.) His testimony, however, reflects that payment is not forthcoming soon, if at all.[3] This uncertainty is highlighted by Shapiro's statement that his company would be able to pay the judgment if he "strike[s] the lottery." (*Id.* at 248.)

3.   Q.  Have you paid th[e] judgment?
    A.  No.
    Q.  Do you intend to pay the judgment?
    A.  Yes.
    Q.  When do you intend to pay it?
    A.  I'm not quite sure.
    Q.  What does that mean, you're not quite sure? Why aren't you quite sure when you're going to pay it?
    A.  I don't have the funds to pay for it.
    . . . .
    Q.  Mr. Shapiro, is it your position that A. Shapiro & Sons, Inc., does not have the funds to pay the $59,000 judgment?
    A.  That is correct.
    . . . .
    Q.  Sitting here today, can you represent that you'll pay this judgment within the next six months?

In sum, the instant matter is not on a factual par with *Davis* and, in any case, this court is disinclined to read *Davis* as applying the kind of declaratory relief permitted by CERCLA to the facts at bar. Moreover, there is overwhelming support in the case law for the proposition advanced by Defendants, with which the court agrees, that a party must pay at least some money in response costs prior to instituting a CERCLA-based declaratory judgment action.

**3.**

Hanging on by a thread, Plaintiff advanced the notion at oral argument that the present matter could be independently maintained as a declaratory judgment action, at the court's discretion, under the Declaratory Judgment Act ("DJA"). The court declines the invitation to exercise its discretion in this manner. First, the argument comes too late to have been addressed by the parties in any manner worthy of serious consideration. Second, and more to the point, the court is not inclined to permit an indirect approach to declaratory relief when the direct CERCLA-based approach, for the reasons described, is unavailable. Even the *Davis* court recognized that "[a] declaratory judgment allocating liability for costs to be incurred in the future is a unique creature of CERCLA" and that "[o]rdinarily, courts do not

    A.  No.
    Q.  Can you represent you'll pay this judgment within the next six years?
    A.  Yes.
    Q.  And why do you say that?
    A.  I am a man who pays all of my bills.
    . . . .
    Q. . . . [D]o you believe you're going to be able to pay this judgment—and obviously it's not a legal commitment, but do you believe you're going to be able to pay this judgment within the next year?
    A.  Yes.
    Q.  And why do you say that? How do you intend to pay this within the next year?
    A.  I'm not sure.
(Docket No. 45, Exhibit D (Shapiro Dep.) at 235–46.)

adjudicate liability for damages that have not yet been sustained." *Id.,* 20 F.Supp.2d at 332.

Finally, there are practical reasons for the court's declining to address the matter under the DJA. In order to do the allocation Plaintiff suggests, even for declaratory judgment purposes only, an entire trial would be required. That undertaking would render hollow Plaintiff's concession that its claims for contribution on Counts I and II should be dismissed. In the court' opinion, judicial resources are best preserved by having Plaintiff's claims heard at one time in one forum, if at all.

### D.

Given the court's ruling concerning the ripeness of the litigation, it has not addressed Sears and Apkins' alternative assertions. Nonetheless, the court wishes to note the following, if for no other reason than to guide the parties' future steps. First, there appears to be merit in Sears' "indirect seller" argument, at least at first blush. At his deposition, Burton Shapiro testified that he never discussed with Sears what he intended to do with its batteries once he purchased them. Thus, it appears that Sears may well have been an "indirect seller," not a "generator" of the batteries. Second, in light of *Acushnet,* it may well prove inequitable to force Alpert, or indeed Apkin, to litigate the issues presented here given the minimal quantity of hazardous substances apparently attributable to either one of them.

### IV. *CONCLUSION*

For the reasons stated, the court will allow Defendants' summary judgment motions and dismiss the claims against Sears, Roebuck & Co., Rutland Waste & Metal Company and Morris Alpert d/b/a North Adams Junk Co. without prejudice. In addition, the court, *sua sponte,* will dismiss the case against Philip Apkin, the only non-moving defendant. As stated previously, this ruling will be without prejudice to Plaintiff's reasserting its claims if and when it has paid response costs.

A separate order shall issue.