Gordon, Robert B., J.
Presented for decision is the Motion for Summary Judgment of third-party defendant Johnson Controls, Inc. (“Johnson”). By this motion, Johnson seeks the dismissal of claims for statutory contribution and common-law indemnity brought against it by primary defendant Riley Brothers, Inc. (“Riley”).[1] For the reasons which follow, Johnson’s motion will be Allowed.
PROCEDURAL BACKGROUND
This case arises out of a construction excavation in which defendants Riley and Dunaff are alleged to have negligently caused the rupture of a water service pipe. The resulting release of water is claimed to have infiltrated underground pipes belonging to Trigen-Boston Energy Corporation (“Trigen”), and thereby produced waterhammers causing damage to Trigen’s steam system.
Plaintiff Ace American Insurance Company (“Ace”) insured Trigen’s property, and made payments to it in respect of damage claims in the amount of $3.8 million. Ace has brought the present subrogation action against Riley and Dunaff, seeking to recover these insurance payments through claims of negligence. Riley, in turn, has brought a third-party action against Johnson for contribution and indemnily, charging Johnson with negligence in the way it maintained and operated Trigen’s steam system. By this action, Riley seeks to hold Johnson liable for contribution and indemnity as a joint tortfeasor in connection with Trigen’s property damage.
Through the present motion, Johnson seeks summary judgment against Riley’s claims, arguing that Johnson may not be held liable to Trigen as a matter of law on account of a settlement agreement and release that it (Johnson) previously entered into with Trigen. If Johnson cannot be liable in tort to Trigen as a tortfeasor, the argument goes, then Riley’s derivative claims for statutory contribution and common-law indemnity necessarily fail. The Court agrees.
PERTINENT FACTS
In June of 2005, Trigen and Johnson entered into an agreement, pursuant to which Johnson agreed to maintain and operate Trigen’s steam delivery system in Boston.
On or around May 1, 2007, Trigen and Johnson elected to terminate their contract prior to the expiration of its term. In connection with this termination, Trigen and Johnson executed a'Termination Agreement, whereby the parties agreed that their contractual relationship would end effective September 30, 2007. In the interim, Johnson transferred certain of its employees to Trigen, and delegated responsibility to Trigen for overseeing the performance of their duties. The incidents from which the present litigation arose occurred in May and September of2007, during the final months of the Trigen/Johnson contract.
On or around October 16, 2009, more than two years following the damage to Trigen’s property[2] but some six months prior to the commencement of Ace’s subrogation action, Trigen and Johnson entered into a Settlement Agreement and Release. This Agreement grew out of a commercial dispute involving Trigeris payment obligations in respect of work that had been performed by Johnson (referred to in the Agreement as the “Dispute”); and it did not explicitly reference Johnson’s potential liability for damage to the steam system dating to the events of 2007. Under this contract, Trigen paid Johnson the amount of $6,400,000, and the parties exchanged general releases of claims.
The release in favor of Johnson that Trigen gave as part of the Settlement Agreement and Release provided in relevant part as follows:
[Trigen] hereby releases and forever discharges [Johnson], its shareholders, members, principals, attorneys, agents, servants, employees, officers, directors, subsidiaries, and affiliates, and all of their heirs, executors, administrators, successors or assigns, from all claims, counterclaims, causes of action, agreements, debts, demands, expenses, liabilities, obligations, representations, rights to payment, acts, omissions, and liabilities, and all other claims of every kind, nature and description whatsoever, liquidated and unliquidated, fixed and contingent, matured and unmatured, disputed and undisputed, legal and equitable, secured and unsecured, accrued and unaccrued, known and unknown, choate and inchoate (“Claims”), which [Trigen] has, may have or ever had from the beginning of the world to the date hereof, including without limitation any Claims arising out of or in any way related to the Dispute.
(Emphasis added.)
The Settlement Agreement and Release entered into by Trigen and Johnson, by its broad terms, covered *310 all claims and liabilities of every name and nature that Trigen might have had against Johnson in any way related to the operation and maintenance of its steam system. However, because it made no express reference to the as-yet unfiled civil claims related to the 2007 incidents, and because Trigen had not even made any allegations against Johnson, the Settlement Agreement and Release specified no allocation of the amount of consideration under this Agreement that related to Johnson’s potential liability in respect to such claims.
DISCUSSION
Riley’s claim for contribution is statutory in nature, arising under G.L.c. 231B, §1 et seq. Riley’s claim for indemnity, by contrast, is a creature of common law. Both claims, however, are fundamentally derivative, depending as they do on Johnson’s predicate liability in tort for damage caused to the property of Trigen. It is for this reason that the claims fail as a matter of law.
Statutory Contribution
The Massachusetts Contribution Among Joint Tort-feasors Act provides in pertinent part as follows:
(a) [W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.
Mass. G.L.c. 231B, §l(a). To make out a viable contribution claim under this statute, however, Riley must show that Johnson is directly liable in tort to Trigen.[3] See Berube v. City of Northampton, 413 Mass. 635, 638 (1992) (“Contribution claims are derivative and not new causes of action. Without liability in tort there is no right of contribution”); Liberty Mut Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978) (contributor required by statute to be directly liable to plaintiff); O’Mara v. H.P. Hood & Sons, 359 Mass. 235, 237-38 (1971) (statute excludes from contribution liability those who are not directly liable to the injured party).
The Contribution Among Joint Tortfeasors Act further addresses the circumstance presented here, where one putative tortfeasor settles with the underlying claimant and in such connection receives a release of claims absolving it from liability. Mass. G.L.c. 23IB, §4 provides as follows:
When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:
(a) It shall not discharge any of the other tortfea-sors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and
(b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
(Emphasis added.)
Applying the foregoing statutory provisions, it is evident that contribution liability cannot run to Johnson as a joint tortfeasor in this case. The undisputed evidence establishes that, subsequent to the occurrence of the events giving rise to the damage to Trigen’s property, Trigen and Johnson entered into an agreement resolving all outstanding claims and disputes between them. The general release thereby given to Johnson by Trigen could not possibly be broader in its scope of coverage, extending by its terms to “all . . . claims of every kind, nature and description whatsoever, . . . known and unknown, choate and inchoate (“Claims”), which [Trigen] has, may have, or ever had from the beginning of the world to the date hereof...” Although the release makes no express reference to the 2007 incidents, and by contrast does identify the parties’ payments-related dispute concerning work performed by Johnson for Trigen, the release nonetheless recites that it is intended to resolve “all” outstanding claims and that its specification of the parties’ payments-based dispute was “without limitation” to the much broader set of claims being discharged. Moreover, the Settlement Agreement sets forth certain identified claims being excluded from its coverage and release [e.g., warranty claims for equipment and equipment installation), and those so referenced do not include Trigen’s property damage claims arising out of the 2007 excavation incidents.
Chapter 23 IB, Section 4 provides that a joint tortfeasor’s settlement and release agreement with an injured claimant, if entered into “in good faith,” will operate to discharge that tortfeasor from all contribution liability to any other tortfeasor. This is what the evidence reflects occurred in the case at bar. Johnson entered into a Settlement Agreement and Release with Trigen, for consideration[4] pursuant to which it received a general release from Trigen absolving it of all liability for claims of every name and nature. Particularly in light of the Settlement Agreement’s express carve-out for specified claims not covered by the release, no fair reading of this instrument will permit the conclusion that tort claims related to the events of 2007 (and omitted from the carve-out) were intended to be preserved and not subject to the release’s effect. Therefore, absent evidence of collusion, fraud, dishonesty or other wrongful conduct such as would demonstrate an absence of “good faith,” see Noyes v. Raymond, 28 Mass.App.Ct. 186 (1990), Johnson’s release from tort liability by Trigen operates by statute to relieve it of all contribution obligations to third parties that are derivative thereof. See, e.g., Sword & Shield Restaurant v. Amoco Oil Co., 11 Mass.App.Ct. 832, 834 (1981).
In opposition to summary judgment, Riley argues that Trigen’s boilerplate recital that “[t]he execution, delivery and performance of this Settlement Agreement by it does not conflict with any material agree *311 ment, instrument or understanding, oral or written, to which it is a party or by which it may be bound” somehow operated to preserve a right to assert negligence claims against Johnson. It plainly does no such thing, and is in fact no more than a companion representation to the familiar warranty that the Settlement Agreement and Release is “legally binding and enforceable in accordance with its terms.”
The Court is aware that Riley will be entitled to an offset from any primary liability it may come to have to Ace in the amount of such portion of the consider-, ation paid to Trigen deemed allocable to the negligence claims arising out of the 2007 excavation incidents. This is a clear mandate of G.L.c. 23 IB, §4{a). The Court further recognizes that, inasmuch as the Trigen/Johnson Settlement Agreement and Release extinguished a global set of claims (rather than the singular tort claim that is the subject of Ace’s subro-gation action), determining the fair amount to offset from any tort judgment against Riley will require an evidentiary hearing of some nature addressed to such allocation. Although one Court in the Commonwealth has found that practical considerations militated in favor of denying a settling third-party defendant its requested dismissal from a contribution action (without prejudice) until after this allocation determination could be made, see Commonwealth of Massachusetts v. Bechtel Corp., 24 Mass. L. Rptr. No. 5, 97 (2008) (Gants, J.), this Court does not believe that such determination needs to forestall its declaration that Johnson is entitled to summary judgment against Riley’s contribution claim. The Court stands ready to address the matter of allocation if Ace/Trigen and Johnson are unable to agree upon one; or, in the event there is agreement, if Riley deems it appropriate to challenge its good faith and legitimacy.
In the hope of avoiding the potential problems posed by the indeterminacy of Riley’s right to allocable offset on account of Johnson’s settlement with Trigen, and having already declared its intentions insofar as concerns Johnson’s right to dismissal as a joint tortfeasor, the Court will defer the entry of summary judgment in favor of Johnson pending resolution of the question of claim allocation.
Accordingly, the parties are hereby directed to proceed as follows:
(1) Within 60 days of their receipt of this Memorandum of Decision, representatives of Ace/Trigen and Johnson shall confer in good faith to determine the amount of the consideration provided by Johnson to Trigen in their Settlement Agreement and Release that shall be deemed allocable to the release of potential negligence claims against Johnson arising out of the May/September 2007 excavation incidents.
(2) If Ace/Trigen and Johnson are able to agree upon such a stipulated allocation then, within the same 60-day time period, they shall forward the same (together with any non-privileged materials in support thereof) to counsel for Riley.
(3) Following receipt of the stipulated allocation and supporting materials, Riley shall have 30 days to report to Trigen and Johnson whether it intends to challenge such allocation on grounds of collusion, fraud, dishonesty or other wrongful conduct. In the event of such a challenge, and failing the ability of the parties to strike a compromise on the amount of allocation, counsel are directed to notify the Court that an evidentiary hearing will be necessary to address the matter.[5]
(4) In the event that Ace /Trigen and Johnson are unable to agree upon a stipulated allocation within the 60-day window provided for herein, counsel for these parties shall promptly notify the Court so that it may arrange a hearing to resolve the matter. Counsel are advised that, should this circumstance come to pass, it is the Court’s present inclination to conduct a baseball-style proceeding in which the three interested parties to this matter—Ace /Trigen, Johnson and Riley—shall submit a proposed allocation number (and affidavits and a brief in support of the same). The Court will then select the one that, based on its assessment of all the relevant considerations, is most reasonable. The Court will not compromise or blend these numbers in anyway, however, thus incentivizing each pariy to put its most reasonable foot forward.
Common-Law Indemnify
Massachusetts law recognizes a right to common-law tort indemnity in only narrow circumstances. Specifically, the right arises where the party seeking indemnification did not join in the negligent act, but is nonetheless exposed to derivative or vicarious liability by reason of the negligence of another. See Greater Boston Cable Corp. v. White Mountain Cable Construction Corp., 414 Mass. 76, 79 (1992); Fireside Motor, Inc. v. Nissan Motors Corp., 395 Mass. 366, 369 (1985); Stewart v. Roy Bros., 358 Mass. 446 (1970).
In the present case, the plaintiffs claims against Riley arise out of Riley’s actions in purportedly causing the ruptured water service pipe and the resulting damage to Trigen’s steam system. Ace has not asserted any direct claims against Johnson; so if Riley is adjudged liable in tort for damage to the property of Ace’s insured, it will be on account of Riley’s own negligence and not by reason of any vicarious or derivative responsibility for Johnson’s. To be sure, Riley maintains that Johnson should be deemed a joint tortfeasor, and thereby share in any damages liability that may be assessed against it in Ace’s negligence action. But such a claim is conceptually one for contribution rather than indemnity, which as a matter of law will not lie on these facts.
CONCLUSION AND ORDER
For the foregoing reasons, third-party defendant Johnson Controls, Inc.’s Motion for Summary Judg *312 ment is Allowed, the actual entry of judgment to be Stayed pending resolution of the allocation offset issue as provided for hereinabove.

Co-defendant Dunaff Construction, Inc. (“Dunaff j has filed an Opposition to Johnson’s motion as well, but the Court does not believe it currently has standing to do so.

Erigen had by this time long since made and collected on its insurance claim with Ace.

Plaintiff Ace, having discharged its insurance payment obligations to Trigen, has become subrogated to the rights of Trigen for purposes of the negligence action from which Riley’s contribution claim derives.

Riley notes that Johnson parted with no cash in its agreement with Trigen. Perhaps; but this surely does not mean that Johnson gave no consideration in the settlement. The record reflects that the payments for service received from Trigen were substantially discounted by Johnson; and, in all events, Johnson provided Trigen with its own release of claims that carried value.

Although not contemplated by Chapter 231B, §4 (and thus not within the power of this Court to order), the Court encourages the parties to recognize the possible wisdom of expressing the allocation offset to which Riley is entitled as a percentage of Ace’s damages recovery rather than a fixed amount of money. The Court is prepared to accept this sort of stipulation as a fair fulfillment of the core aspirations of the statute; and the parties may well find it easier to settle on Johnson’s fault relative to that of Riley and Dunaff than to pinpoint an actual economic value to assign to its release from such a widely variable potential liability.