Naukeag Inn, Inc. *vs.* Granville N. Rideout & another.

Worcester. October 6, 1966. — November 4, 1966.

Present: Spalding, Whittemore, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Release. Fiduciary. Practice, Civil,* Ordering judgment.

Any fiduciary relationship in which the sellers of an inn stood to a newly formed corporation to which they sold the inn and to a husband and wife who owned one half of the corporation's stock and were directors and officers thereof, by reason of the sellers' ownership of the other half of the corporation's stock and positions as directors and officers thereof, ended when the parties, at arm's length, negotiated a termination of every aspect of their business relationship and of the sellers' offices and interest in the corporation; and general releases, without exceptions, then executed by the husband and wife individually and by the wife on behalf of the corporation, after consultation with counsel, released all claims which the releasors had against the sellers, including claims for representations concerning the sewer and septic tank facilities upon the inn property which the releasors did not discover to be false until after the releases had been delivered. [356–357]

In an action at law in which count one of the plaintiff's declaration was based on deceit, count two on breach of warranty, and count three on breach of contract, and counts two and three were alleged to be for "causes of action arising out of [the] same matter" as count one, and a demurrer was sustained to counts two and three and a general release executed by the plaintiff rendered proper the direction of a verdict for the defendants on count one, this court did not consider the plaintiff's appeal from the sustaining of the demurrer and overruled the plaintiff's exception to the direction of the verdict and ordered judgment to be entered for the defendants on all counts. [357]

Contract and tort. Writ in the Superior Court dated October 31, 1963.

A demurrer to counts two and three of the plaintiff's declaration was sustained by *Meagher, J.,* and count one of the declaration was tried before *Noonan, J.*

*Philip J. Murphy* for the plaintiff.

*Willard Ide Shattuck, Jr. (Andre A. Gelinas* with him) for the defendants.

CUTTER, J. This action at law commenced October 31, 1963, seeks to recover damages for deceit (count 1), breach of warranty (count 2), and breach of contract (count 3), based upon the vendors' misrepresentations concerning the sewer and septic tank facilities upon certain land in connection with its sale. An appeal from an order, sustaining a demurrer to counts 2 and 3, is before us, as well as a bill of exceptions presenting the issue whether the trial judge properly directed a verdict on count 1 for the defendants, Rideout and his wife. There was evidence which, in its aspect most favorable to the plaintiff (Naukeag), would have warranted finding the facts summarized below.

The Rideouts owned land in Ashburnham on which stood an inn. Mrs. Margaret T. Dunton and her husband negotiated with Rideout concerning the purchase of the land and inn. Naukeag was formed on October 13, 1959. It purchased the property from the Rideouts on October 15, 1959. Naukeag's incorporators were the Rideouts, owners of fifty per cent of Naukeag's stock, and the Duntons, owners of the other half of the stock. Each incorporator became and remained a director and an officer of Naukeag until the settlement mentioned below. The purchase agreement dated October 14, 1959, provided that the buyer's offer was made "solely upon his [*sic*] visual inspection of the premises and not upon any representations" by or in behalf of the seller. In connection with the purchase, the Rideouts received from Naukeag a second mortgage for $27,000.

In December, 1959, "difficulty arose between the Rideouts and the Duntons." After April, 1960, "the Rideouts took no part in the operation of" Naukeag. Sometime in January, 1960, Naukeag stopped payments on the second mortgage. The Rideouts started foreclosure proceedings. A special meeting of Naukeag's stockholders was called to obtain authority to sue the Rideouts but, because the Rideouts owned half the stock, the proposal was not adopted.

The Duntons then brought a bill in equity in behalf of Naukeag against the Rideouts alleging (a) that the Rideouts had made various misrepresentations prior to the

formation of Naukeag, concerning their intended future participation in its operation, and (b) that the Rideouts had done various things causing embarrassment to Naukeag. The bill made no allegations of misrepresentations by the Rideouts concerning (a) the capacity of the inn or (b) its septic tank and sewer facilities.

In May, 1960, the equity suit was settled and, as part of the settlement, the Rideouts agreed to transfer their stock in Naukeag to the Duntons, and to resign as directors of Naukeag. Naukeag gave to the Rideouts, under date of May 31, 1960, a general release of all claims, especially those "arising out of the sale to it of" the inn, or which "I [*sic*] may hereafter have from anything which has heretofore happened." The Duntons released the Rideouts from all claims arising out of the sale and the conduct of the Rideouts after the sale. A stipulation describing the settlement provided for conveyance of specified land to the Rideouts, discharge of the old second mortgage and the delivery of a new second mortgage and note to the Rideouts for $9,500, discharge of the Rideouts' liability as indorsers of a first mortgage note given by Naukeag in October, 1959, an arrangement saving the Rideouts harmless from all Naukeag's liabilities, and an agreed distribution of certain tangible personal property, as well as the resignations, stock transfers, and releases already mentioned. Mrs. Dunton talked over the stipulation with her attorney, Mr. Murphy, before signing it. The releases of the Rideouts signed by the Duntons and by Mrs. Dunton on behalf of Naukeag were witnessed by Mr. Murphy.

At the trial of count 1 of the present action there was substantial evidence that, during the negotiations in October, 1959, between the Rideouts and the Duntons for the sale of the property to Naukeag, Rideout orally and by brochure had made false representations of various types (which need not be set out in detail) concerning the sewer and septic tank facilities on the premises, which were stated to include a "5000-gal. septic tank with filter bed." Mrs. Dunton testified that when she signed the releases "she was

not aware of any sewerage problem'' at the inn. On December 19, 1960, and in the summer of 1961, it became necessary to clean out a cesspool on the premises. Thereafter other sewerage difficulties arose. An expert sanitary engineer testified that the sewer and septic tank facilities on the premises in 1962 were not as large as those described in the Rideouts' brochure, that the cost of constructing a 5,000 gallon septic tank system would have been $27,000, and that an incomplete 4,000 gallon system had already cost $12,500. There was evidence of reliance by the Duntons upon Rideout's misrepresentations.

1. The broad general releases were in terms sufficiently comprehensive to include all existing claims, whether disclosed or undisclosed. They were executed after consultation with counsel for the Duntons. The 1960 equity suit had alleged misrepresentations by the Rideouts in connection with the 1959 sale of the property although in respects in no way concerning the sewer facilities. We assume that no circumstances showing the falsity of the representations about the sewer facilities had been discovered by the Duntons prior to May 31, 1960, when the releases were given.

A general release, in terms as broad as those now before us, is to be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release. *Willett* v. *Herrick,* 258 Mass. 585, 595. *Willett* v. *Webster,* 337 Mass. 98, 104. *Sherman* v. *Koufman,* 349 Mass. 606, 610–611. If exceptions were intended to the scope of the releases, they should have been stated. See *Radovsky* v. *Wexler,* 273 Mass. 254, 258. See also *Pitman* v. *J. C. Pitman & Sons, Inc.* 324 Mass. 371, 375.

Naukeag, however, contends that the release is not binding because the Rideouts, as promoters and directors of Naukeag (see *Lazenby* v. *Henderson,* 241 Mass. 177, 180), were fiduciaries in their dealings with Naukeag and the Duntons. It relies on cases like *Allen* v. *Moushegian,* 320 Mass. 746, 756–757 (release by a client of her attorney without independent legal advice). Such authorities are not applicable here, where nothing indicates any continuing confidence in the Rideouts on the part of the Duntons.

The stipulation shows that the parties, at arm's length, had negotiated a termination of every aspect of their relationship and of the Rideouts' offices and interest (except the new second mortgage) in Naukeag. The fiduciary relationship, if any still persisted, was to end simultaneously with the delivery of the releases. In the circumstances, the Duntons (acting with independent legal advice) are bound by the broad releases which they executed without expressly excepting undiscovered and undisclosed matters. Cf. *Hill v. Hall*, 191 Mass. 253, 262–264, but see pp. 265–266; *Arnold v. Maxwell*, 223 Mass. 47, 51–52, but see pp. 52–54; *Reed v. A. E. Little Co.* 256 Mass. 442, 449; *Sher v. Sandler*, 325 Mass. 348, 352–355 (where a continuing relationship of confidence was regarded as requiring disclosure). A verdict for the Rideouts on count 1 was properly directed.

2. We need not consider whether the demurrer to counts 2 and 3 was properly sustained. Those counts were alleged to be for "causes of action arising out of [the] same matter" as count 1. If tried on the merits, these counts (based upon the same misrepresentations and transactions alleged in count 1) would be barred by the general release. The case is one for ordering judgment for the defendants on counts 2 and 3, under G. L. c. 231, §§ 124[1] and 125 (which empowers this court "to render any judgment and to make any order that ought to have been made upon the whole case"). See *Mechanics Natl. Bank v. Worcester County Trust Co.* 341 Mass. 465, 473–474. Naukeag under count 1 was bound, and had full opportunity, to prove all facts which would be relevant on counts 2 and 3. All pertinent facts in their aspect most favorable to Naukeag are before us.

> *Exceptions overruled.*
> *Judgment to be entered for*
> *the defendants on all counts.*

[1] Section 124 reads in part, "[w]henever a question in dispute . . . in any civil action . . . depends upon the decision of a question of law, the full bench . . . upon . . . exceptions . . . may, if satisfied that it has before it all the facts necessary for determining the question in dispute, direct that such judgment . . . be entered . . . as shall accord with the determination of the full court . . . ."