ATLAS TACK CORPORATION VS. BERNARD M. CROSBY,
individually & as trustee,[1] & others.[2]

No. 94-P-646.

Suffolk. May 19, 1995. - October 3, 1996.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Hazardous Materials. Release.*

The language of general releases executed in 1973 contained no limitations and therefore encompassed liability for all claims and causes of action including the possibility of future liability: the releases thus operated to bar a claim for contribution for environmental response costs pursuant to G. L. c. 21E and were not invalid under that statute's § 5(*f*), inserted by St. 1983, c. 7, § 5. [431-434]

CIVIL ACTION commenced in the Superior Court Department on August 22, 1991.

The case was heard by *Charles F. Barrett*, J., on a motion for summary judgment.

*James E. McGuire* for the plaintiff.

*Louis S. Moore* for the defendants.

ARMSTRONG, J. The plaintiff, a Massachusetts corporation, seeks contribution from the defendants for environmental response costs incurred under G. L. c. 21E (the Massachusetts Oil and Hazardous Material Release Prevention and Response Act), resulting from contamination of a Fairhaven manufacturing site while the site was operated by a predecessor New

---

[1]Of the Springfield Republican-Daily News Employees Beneficial Fund.

[2]James R. Crowe, individually and as trustee of the Springfield Republican-Daily News Employees Beneficial Fund, Sidney R. Cook and James F. Duggen, individually and as trustees of the Springfield Union Employees Beneficial Fund, the Republican Company Pension Plan, the Springfield Newspaper Employees Association Pension Plan, and the Springfield Union News and Sunday Republican.

York corporation ("Atlas Tack-N.Y."). During this period, two Springfield newspaper pension funds, the Springfield Republican-Daily News Employees Beneficial Fund and the Springfield Union Employees Beneficial Fund (the "pension funds"), collectively held a majority of the shares of stock in Atlas Tack-N.Y., and the theory of the complaint is that the pension funds are responsible parties for the contamination. A Superior Court judge allowed the defendants' motion for summary judgment, concluding that general releases which the plaintiff caused to be executed in 1973 barred its claim.[3] The plaintiff has appealed. We affirm.

From 1945 to 1967, Atlas Tack-N.Y. operated an industrial facility in Fairhaven, discharging hazardous waste from its manufacturing processes into a lagoon which it had constructed on the premises. During that period, the pension funds held controlling shares of the corporation. On June 6, 1967, Great Northern Industries, Inc. ("Great Northern"), a Massachusetts corporation, purchased 74,348 shares, or eighty percent, of the capital stock in Atlas Tack-N.Y. from the respective trustees of the pension funds (collectively, the "trustees").[4] A subsequent merger between Atlas Tack-N.Y. and Great Northern resulted in the creation of the plaintiff, which continued to use the lagoon for disposal of hazardous wastes until approximately 1970, when such use was discontinued.

After the 1967 sale of the Atlas Tack-N.Y. stock, a dispute arose over the trustees' tax liabilities, resulting in litigation. The litigation was resolved in 1973, at which time and pursuant to which the plaintiff executed a general release with each trustee in his individual and trustee capacities. Each release provided that the plaintiff discharged the particular trustee

[3]In its complaint, the plaintiff alleged that defendants the Republican Company Pension Plan and the Springfield Newspaper Employees Association Pension Plan are successors in interest to the pension funds, that the pension funds' respective trustees were employees of the Springfield Union News and Sunday Republican newspaper, and thus that the newspaper is vicariously liable for acts of its employees. For purposes of the motion for summary judgment, however, both the parties and the judge confined their analysis to the threshold issue of the liability of the pension funds and the trustees. We do the same. The plaintiff's complaint against Sidney Cook was dismissed pursuant to a Superior Court standing order. It is not before us.

[4]The purchase and sale agreement between Great Northern, as buyer, and the trustees of the respective pension funds, as sellers, contained no provision releasing the trustees or the pension funds from future liability.

"from all manner of actions, causes of action . . . which [the plaintiff] ever had, now has or which it or its successors hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents [October 9, 1973]." The releases are under seal, notarized, and recite consideration.

In 1985, pursuant to G. L. c. 21E, the Department of Environmental Quality Engineering, now the Department of Environmental Protection ("DEP"), undertook an emergency response action to clean up the Fairhaven site, pursuant to which the plaintiff in 1991 paid in excess of $1,875,000,[5] with cleanup costs continuing to accrue. This litigation ensued.[6]

In allowing the defendants' motion for summary judgment, the judge correctly concluded that the releases at issue were not invalid under G. L. c. 21E, § 5(*f*).[7] Section 5(*f*) makes private agreements of indemnity or release, hold-harmless

---

[5]Of this sum the plaintiff paid $1,125,000 to the Commonwealth pursuant to the emergency response action under G. L. c. 21E, and the remainder was paid to the plaintiff's own contractors. Under § 4 of G. L. c. 21E, regardless of any involvement by the DEP, there is a private right of action in favor of any person who undertakes the removal of oil or hazardous materials and who seeks recovery of response costs from the person liable for the contamination. *Reynolds Bros.* v. *Texaco, Inc.*, 420 Mass. 115, 122 n.10 (1995).

[6]Thereafter, in March, 1992, pursuant to 42 U.S.C. §§ 9601 et seq. (1988) (the Comprehensive Environmental Response, Compensation, and Liability Act ["CERCLA"]), the Environmental Protection Agency ("EPA") issued to the plaintiff a notice of potential liability regarding the Fairhaven site. The plaintiff did not seek to amend its complaint to include a claim for costs incurred pursuant to CERCLA, and the judge did not consider this issue in ruling on the motion for summary judgment. Although the plaintiff frames the issue on appeal as whether the 1973 release bars its claims under both G. L. c. 21E and CERCLA, potential claims respecting liability arising pursuant to CERCLA are not before us, and thus we do not reach them.

[7]Section 5(*f*), as inserted by St. 1983, c. 7, § 5, provides, in full: "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or site or from any person who may be liable for a release or threat of release of hazardous material under this section, to any other person the liability imposed under this section. Nothing in this paragraph shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section." The provisions of § 5(*f*) are virtually identical to parallel provisions in CERCLA, 42 U.S.C. § 9607(e)(1). Accordingly, where appropriate, and "absent compelling reasons to the contrary or sig-

guaranties, insurance, and the like ineffective to relieve a responsible party of liability to the Commonwealth for cleanup costs, but it permits private parties to transfer between or among themselves some or all of the financial responsibility for paying such costs. *Griffith* v. *New England Tel. & Tel. Co.,* 32 Mass. App. Ct. 79, 82-84 (1992), *S.C.,* 414 Mass. 824 (1993). See also *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.,* 416 Mass. 684, 692-693 (1993). On appeal, however, the plaintiff argues that the releases — which were intended to dispose of tax litigation at a time prior to enactment of G. L. c. 21E, i.e., when environmental liability under G. L. c. 21E was nonexistent and unforeseen — cannot serve to bar its claim for contribution. Relevant authorities do not support that contention.

" '[L]aws enacted after the execution of an agreement are not commonly considered to become part of the agreement unless its provisions clearly establish that the parties intended to incorporate subsequent enactments into their agreement.' *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge,* 395 Mass. 535, 551 n.13 (1985), quoting [from] *Feakes* v. *Bozyczko,* 373 Mass. 633, 636 (1977)." *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.,* 416 Mass. at 694. See *John S. Boyd Co.* v. *Boston Gas Co.,* 992 F.2d 401, 406 (1st Cir. 1993). Thus, the interpretation of the releases "turns on the 'expectations and intentions of the parties, at the time of agreement, with regard to the future effect of [the releases].' " *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc., supra* at 694, quoting from *Feakes* v. *Bozyczko, supra.* To transfer the responsibility for payment regarding liability under G. L. c. 21E, the releases must contain language broad enough to support the conclusion that the parties intended to transfer financial responsibility either for contingent environmental liability, or for all liability. See *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc., supra* at 693, and cases cited.

The standard form releases presently before us are written in the broadest, most general terms — "all manner of actions, causes of action . . . which [the plaintiff] ever had, now has or which it or its successors hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatso-

---

nificant differences in content[,]" *Rollins Envtl. Servs., Inc.* v. *Superior Ct.,* 368 Mass. 174, 180 (1975), we construe § 5(*f*) consistently with Federal decisions.

ever." Although the genesis of the releases may have been the parties' tax litigation, there is no language restricting the releases to claims arising out of that litigation; there is no language of limitation in any respect. Compare *Polaroid Corp.*, 416 Mass. at 694 (no restriction in indemnity provision). We agree with the judge's conclusion that these releases encompass liability for all claims and causes of action, including the possibility of future liability. In this respect, the language of the general releases is even broader than that of the indemnity clause in the *Polaroid Corp.* case, *supra* at 695-696,[8] which the Supreme Judicial Court held was broad enough to encompass CERCLA liability. Compare *Mardan Corp.* v. *C.G.C. Music, Ltd.*, 804 F.2d 1454, 1461-1462 (9th Cir. 1986); *Olin Corp.* v. *Consolidated Aluminum Corp.*, 5 F.3d 10, 15-16 (2d Cir. 1993); *FMC Corp.* v. *Northern Pump Co.*, 668 F. Supp. 1285, 1292 (D. Minn. 1987), appeal dismissed, 871 F.2d 1091 (8th Cir. 1988); *In re Hemingway Transp., Inc.*, 126 Bankr. 650, 653 (D. Mass. 1991), after remand, 174 Bankr. 148 (D. Mass. 1994). See *Mobay Corp.* v. *Allied-Signal, Inc.*, 761 F. Supp. 345, 358 n.15 (D. N.J. 1991). Contrast *Griffith* v. *New England Tel. & Tel. Co.*, 32 Mass. App. Ct. at 80 and 84, *S.C.*, 414 Mass. at 830; *Providence & Worcester, R.R.* v. *Chevron U.S.A. Inc.*, 416 Mass. 319, 324 (1993); *John S. Boyd Co.* v. *Boston Gas Co.*, 992 F.2d at 407; *Steego Corp.* v. *Ravenal*, 830 F. Supp. 42, 48-49 (D. Mass. 1993); *Blackstone Valley Elec. Co.* v. *Stone & Webster, Inc.*, 867 F. Supp. 73, 78 (D. Mass. 1994).

"A general release, in terms as broad as those now before us, is to be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release." *Naukeag Inn, Inc.* v. *Rideout*, 351 Mass. 353, 356 (1966). If the parties intended that there be limitations or exceptions to the scope of the releases, then they should have so stated. *Ibid.* See also *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.*, 416 Mass. at 695. The releases offer no such limitations

---

[8] " 'The seller shall hold and save the buyer harmless of and from *any and all* all claims, demands, damages, actions, and causes of action *whatsoever* arising from or growing out of *possession, handling, or use by seller or by others* of materials purchased' (emphasis added)."

or exceptions, and thus are broad enough to bar the plaintiff's claims against these defendants.[9]

Finally, the plaintiff is not assisted by the affidavit of its president, who executed the releases on its behalf. Although this affidavit states that the releases "do not release said parties from liability for hazardous wastes and such a release was never contemplated by the parties," these conclusory allegations do not raise a genuine issue of material fact and are insufficient to withstand the defendants' motion for summary judgment based upon the clear and unambiguous language of the releases. *Id.* at 696-697.

*Judgment affirmed.*

---

[9]*Cram* v. *Northbridge*, 410 Mass. 800, 804 (1991), on which the plaintiff relies, is inapposite. That case concerned G. L. c. 231B, § 4, which abolished the unity of discharge doctrine applicable to joint tortfeasors. The decision concerned the effect of a release on a tortfeasor who was not named in the release, was not a contributor to the settlement, and was not intended to be released by the parties.