DAVID W. ECK & another[1] *vs.* BLAKE J. GODBOUT & another.[2]

Suffolk. May 3, 2005. - July 21, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Malpractice. *Release. Negligence,* Attorney at law.

The broad language of a release that the plaintiff had executed in favor of one of the defendants in settlement of an earlier legal malpractice case barred the plaintiff's later legal malpractice claim against that defendant, where such language amounted to a general release, notwithstanding a reference in that language to the specific incident that had prompted the release [728-730], where the latter claim was in existence at the time the release was signed [730-731], where the claim was not unknown to the plaintiff at the time he executed the release [731], where the defendant had no fiduciary duty to the plaintiff at the time the release was executed [731], and where the mere fact that the release as worded extended to matters that the parties did not specifically have in mind at the time of the execution did not operate to exclude those matters from the scope of release on the ground of mistake [731-732].

This court did not reach the claims involving one defendant in a civil action, where this court had granted further appellate review limited to an issue involving the other defendant. [732]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1996.

The case was heard by *Ernest B. Murphy,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Scott Douglas Burke (Steven J. Bolotin* with him) for Lawrence A. Kellem.

*Robert L. Sheketoff* for the plaintiffs.

*Kenneth B. Walton* for Blake J. Godbout.

SOSMAN, J. As a defense to a claim alleging legal malpractice, the defendant Lawrence A. Kellem contended that the claim

[1] Lois Eck.
[2] Lawrence A. Kellem.

was barred by a release that the plaintiff David W. Eck had executed in his favor in settlement of an earlier malpractice case. A judge in the Superior Court agreed, and entered summary judgment in favor of Kellem. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed, concluding that, in light of *Leblanc* v. *Friedman*, 438 Mass. 592 (2003), the reference in the release to the litigation being settled operated to limit the scope of the release to the claims in that specific litigation. *Eck* v. *Godbout*, 61 Mass. App. Ct. 1112 (2004). We granted Kellem's application for further appellate review, limited to the issue of the release.[3] For the following reasons, we hold that the broad language of the release encompassed Eck's present claim against Kellem, and therefore affirm the entry of summary judgment in favor of Kellem.

1. *Facts and procedural background.* Over a period of years, attorney Kellem represented Eck in various real estate transactions. In 1985, Eck sold real estate in Norwood to one Stephen Bisson. Kellem represented Eck in that matter, and drafted the purchase and sale agreement that governed the transaction. At the time, Eck was concerned about his potential liability for hazardous waste on the property, and asked Kellem to include in the agreement a provision that would protect him from future claims by Bisson with respect to any such hazardous waste. Kellem assured Eck that the agreement contained language that would so protect him.

The following year, Kellem represented Eck in connection with a separate transaction involving real estate in Hull. Two years later, Eck sued Kellem, alleging legal malpractice in connection with the Hull transaction. Eck was represented by Attorney Blake Godbout in that litigation. In June, 1989, while that malpractice action was still pending, Bisson sued Eck seeking to recover damages for alleged hazardous waste on the Norwood property. Attorney Godbout defended Eck in that matter, and took the position (consistent with Kellem's prior advice)

---

[3]Over the course of this protracted litigation, Kellem has raised other defenses, and there are other matters raised by the plaintiffs' appeal from the judgment entered, after trial, in favor of the codefendant, Blake J. Godbout. None of those other issues is before us on this limited further appellate review.

that the language of the purchase and sale agreement precluded any liability to Bisson.

On May 22, 1990, Eck settled his malpractice action against Kellem. In connection with that settlement, Eck executed a release in favor of Kellem (and others). The operative provisions of the release are as follows:

> "I hereby remise, release and forever discharge the said [Kellem] of and from all debts, demands, damages, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, which against the said [Kellem] I now have or ever had from the beginning of the world to this date and more specially for personal injuries sustained by [Eck] as the result of [Kellem's] alleged negligence and breach of contract arising out of the sale of the real estate locate[d] at 48 A Street, Hull, Massachusetts, as more specifically set forth within Plymouth Superior Court Civil Action No. 88-1991 B."

Godbout represented Eck in the settlement of that action, and negotiated its terms (including the terms of the release).

In June, 1993, three years after the release was executed, the environmental lawsuit brought by Bisson against Eck proceeded to trial. Godbout represented Eck at that trial, and Kellem testified as a defense witness. Notwithstanding the claimed protective language in the purchase and sale agreement, Eck was found liable to Bisson, and a judgment against Eck in the amount of $451,262 was entered in January, 1994. That judgment was affirmed. *Bisson* v. *Eck*, 40 Mass. App. Ct. 942 (1996).

Thereafter, Eck filed the present action, alleging malpractice against Kellem in connection with his failure to draft the purchase and sale agreement in a manner that would provide protection against Bisson's environmental claims. In the same action, he sued Godbout for alleged malpractice in connection with his failure to retain any expert witness for his defense of the Bisson lawsuit, and in connection with his representation of Eck and Eck's wife in an unrelated malpractice lawsuit against yet another attorney. Kellem initially moved for summary judg-

ment on the theory that Eck's claim was barred by the statute of limitations, claiming that the statute began to run in 1989, when the Bisson lawsuit was filed. That motion was denied, and the denial was affirmed on interlocutory appeal. *Eck* v. *Kellem*, 51 Mass. App. Ct. 850 (2001). The Appeals Court held that the statute of limitations did not begin to run until judgment was entered against Eck in the Bisson lawsuit in January, 1994, as it was only the judgment that inflicted cognizable harm on Eck. *Id.* at 855-856.

Thereafter, Kellem amended his answer and filed a further motion for summary judgment, contending that the release executed by Eck in 1990 was a general release that operated to release all claims, including the present claim of malpractice in connection with the Bisson purchase and sale agreement. The motion was allowed. Meanwhile, Godbout had also moved for and been granted summary judgment on the theories of malpractice originally alleged against him. However, in the wake of the allowance of Kellem's motion for summary judgment, Eck was allowed to amend his complaint to state a new theory of malpractice against Godbout, namely, that Godbout had been negligent in advising Eck to sign the release without warning him that it was a general release or taking steps to exclude from its scope any claims against Kellem in connection with the Bisson transaction. That malpractice claim was tried to a jury in January, 2003, resulting in a verdict in favor of Godbout.[4]

On appeal, the Appeals Court determined that the 1990 release executed by Eck was not a general release, but rather was limited to a release of claims arising from the separate Hull real estate transaction and the specifically mentioned malpractice action arising from that transaction. The court therefore reversed the order allowing Kellem's motion for summary judgment. With respect to the claims against Godbout, the court affirmed the order of summary judgment in Godbout's favor on the malpractice claims alleged in Eck's original complaint. As to the claim in Eck's amended complaint that Godbout had committed malpractice in connection with the release, the court

---

[4]Godbout also prevailed on a counterclaim against the plaintiffs for unpaid attorney's fees.

determined that it did not need to address the issues raised by
Eck's appeal from the jury's verdict. The conclusion that the
release did not bar the claim against Kellem, and that it oper-
ated only as a limited release, effectively removed the premise
of that remaining claim against Godbout.

2. *Discussion.* a. *Scope of the release.* The central issue before
us is whether the inclusion of the language in the release specifi-
cally referencing the Hull transaction and the earlier malpractice
suit stemming from that transaction ("and more specially for
personal injuries sustained by [Eck] as the result of [Kellem's]
alleged negligence and breach of contract arising out of the sale
of the real estate locate[d] at 48 A Street, Hull, Massachusetts,
as more specifically set forth within Plymouth Superior Court
Civil Action No. 88-1991 B") operated to limit the scope of the
broadly worded release that preceded it (releasing Kellem from
"all debts, demands, damages, actions, causes of action, suits,
accounts, covenants, contracts, agreements, damages and any
and all claims, demands and liabilities whatsoever of every
name and nature, both in law and in equity, which against
[Kellem] I now have or ever had from the beginning to the
world to this date").

We have interpreted virtually identical language — i.e., a
general release followed by "and more especially on account
of" an identified matter — as a general release. See *Glendale
Coal Co.* v. *Nesson*, 312 Mass. 293, 294 (1942). As is often the
case, a release may be prompted by the settlement of a specific
dispute or resolution of a specific issue, but broad wording in
the release operates to settle all other, unrelated matters, even if
they were not specifically in the parties' minds at the time the
release was executed. See *Schuster* v. *Baskin*, 354 Mass. 137,
140 (1968); *Naukeag Inn, Inc.* v. *Rideout*, 351 Mass. 353, 356
(1966); *Radovsky* v. *Wexler*, 273 Mass. 254, 257 (1930); *Atlas
Tack Corp.* v. *Crosby*, 41 Mass. App. Ct. 429, 433 (1996). See
also *Tupper* v. *Hancock*, 319 Mass. 105, 107-108 (1946). The
mere fact that the release itself identifies the specific matter that
prompted the parties to execute a release, does not, by itself,
operate to restrict the scope of a release that contains broad
language releasing all claims of whatever nature the party
executing the release may have against the party to whom the
release is given.

Moreover, in the present case, the specific identification of the claims related to the Hull transaction is introduced by the conjunctive "and" — it thus expressly states that, *in addition to* the broadly described category of "all" claims being released, Eck is also releasing Kellem from the specific malpractice claims associated with the Hull transaction. In effect, the use of "and more specially for" operates as the equivalent of "including but not limited to." It is a common expression used in releases to identify the specific dispute that motivated the parties to enter into the release, and to make clear that claims stemming from that dispute are being released, but it is not intended to limit the generality of any prior, broad description of the full extent of claims being released.

Nothing in *Leblanc* v. *Friedman*, 438 Mass. 592 (2003), changes the fundamental principles that govern the interpretation of releases. In *Leblanc*, a release consisting of standard broad language, followed by "more especially" language identifying the particular medical treatment that had prompted the plaintiffs' medical malpractice claim, was then followed by several additional subparagraphs of releasing language that expressly referred back to that same specific medical treatment. *Id.* at 594-595. The subsequent suit brought by the plaintiffs involved a claim that had been unknown at the time the release was executed, and one of those subparagraphs dealt with the release of "unknown" claims, releasing "unknown" claims growing out of or connected with "said care and treatment." *Id.* at 595. To the extent that the claim then being asserted included matters that did not arise from that specific instance of care and treatment, it had not been released by the subparagraph governing unknown claims. *Id.* at 598-599. Despite the very general language of the first main paragraph of the release, the following subparagraphs addressing particular items (indemnifying the released parties, identifying additional parties being released, and releasing "unknown" claims) each contained language limiting that subparagraph to claims growing out of the specifically identified treatment. *Id.* at 595. The analysis in *Leblanc* focused entirely on the import of the limitation set forth in each of those nonstandard subparagraphs. *Id.* at 598-599. It did not rely on the fact that the initial general language releasing "all"

claims was followed by a reference to the specific incident that had prompted the release, but relied exclusively on the fact that the subsequent subparagraphs (including the relevant subparagraph governing "unknown" claims) cross-referenced the specific incident as the sole item being released by each of those subparagraphs.[5]

In short, nothing in *Leblanc* was intended to overrule prior precedent with respect to how broad language in a release is to be interpreted, or how the mere identification of a particular matter also being released is to affect the scope of such broad language. See *Glendale Coal Co.* v. *Nesson, supra.* The release in this case appears to be a standard form general release, which takes the added and unremarkable precaution of identifying the specific claim that has given rise to the execution of the release, while simultaneously reciting broad language unmistakably releasing "all" claims of whatever nature. It contains none of the nonstandard subparagraphs that informed the *Leblanc* decision. We thus conclude that this was a general release, and that it released "all" claims, of whatever nature, that Eck had against Kellem at the time it was executed.

Eck's remaining theories as to why the release did not extend to the present claim merit little discussion. Eck suggests that the present malpractice "claim" was not in existence at the time he signed the release of "all claims," because the cause of action had not yet accrued for purposes of the statute of limitations. See *Eck* v. *Kellem,* 51 Mass. App. Ct. 850, 855-856 (2001). We need not consider when the cause of action accrued, because the "claim" itself already existed at the time the release was signed. A "claim" arises at the time of the "underlying incident" giving rise to the claim. *Sword & Shield Restaurant, Inc.* v. *Amoco Oil Co.,* 11 Mass. App. Ct. 832, 833 (1981), quoting *Coulson* v. *Larsen,* 94 Wis. 2d 56, 59-60 (1980). Here, the event giving rise to the "claim" — Kellem's alleged negligence in drafting

---

[5]The court also noted that the plaintiffs in that case had not drafted the release and had not been represented by counsel at the time they signed it, invoking the doctrine that any ambiguity in the wording of the release was to be construed against the drafter. *Leblanc* v. *Friedman,* 438 Mass. 592, 599 n.6 (2003), quoting *Bowser* v. *Chalifour,* 334 Mass. 348, 352 (1956). Here, by comparison, Eck was represented by counsel, and his counsel was involved in the negotiation and drafting of the settlement and the release.

the purchase and sale agreement for the sale to Bisson in 1985 — had occurred long before Eck's execution of the release in 1990.

Eck also protests that whatever "claim" he had against Kellem with regard to the Bisson purchase and sale agreement was an "unknown" claim, and that the release does not expressly provide for the release of "unknown" claims. We need not address whether the release, as drafted, applied to "unknown" claims, as the claim against Kellem was "known" to Eck at the time. Eck was aware of the underlying incident (his instruction to Kellem to include protective language in the purchase and sale agreement and Kellem's subsequent drafting of the agreement), and he was also aware that, notwithstanding the wording of that purchase and sale agreement, Bisson had sued him to recover damages for alleged hazardous waste and, one year into that litigation, Bisson's claims had not been dismissed. Not only was Eck fully aware of that pending lawsuit against him, but the attorney who represented him in connection with the release at issue here was representing him in his defense of the suit brought by Bisson. The claim was not "unknown" to Eck at the time he executed the release.

Eck contends that equitable principles should allow him to set aside the release because, he contends, Kellem still had a fiduciary duty to him at the time the release was executed and had continued to advise him that the language in the Bisson purchase and sale agreement would protect him. However, Kellem did not represent Eck at the time of the release. To the contrary, Eck was suing Kellem, and Eck was represented by independent counsel (Godbout) in both the suit against Kellem and in his defense of the lawsuit brought by Bisson. As such, he cannot avoid the release by claiming that he relied on Kellem's advice in connection with that release. See *Naukeag Inn, Inc.* v. *Rideout*, 351 Mass. 353, 356-357 (1966).

Finally, Eck contends that, if the release extended to Kellem's alleged malpractice in the Bisson purchase and sale agreement, it was the product of a "mistake." A release may be rescinded or modified based on a mutual mistake of the parties, but not on one party's unilateral "mistake" about how future contingencies might make the release inadvisable. See *Tupper* v. *Hancock*,

319 Mass. 105, 107-108 (1946). Again, the mere fact that a release as worded extends to matters that the parties did not specifically have in mind at the time of execution does not operate to exclude those matters from the scope of the release. See *Schuster* v. *Baskin*, 354 Mass. 137, 140 (1968); *Naukeag Inn, Inc.* v. *Rideout, supra*; *Radovsky* v. *Wexler*, 273 Mass. 254, 257 (1930); *Atlas Tack Corp.* v. *Crosby*, 41 Mass. App. Ct. 429, 433-434 (1996). That they do not have those matters in mind at the time, and are thus in some sense surprised when the release is later applied to exclude such claims, does not make the execution of the broadly-worded release a "mistake."

We thus conclude that Eck's present claim against Kellem is barred by the terms of the 1990 release, and that summary judgment on that claim was properly entered in favor of Kellem.

b. *Appeal from the judgment in favor of Godbout.* Although we granted further appellate review limited to the issue of the interpretation of the release, Godbout has argued that, in the event we conclude (as we have done) that the release is a general release, we should proceed to affirm the judgment in his favor. Because Eck did not seek further appellate review, Godbout argues that that judgment is now final and "should not be disturbed."

Given the limited scope of the present further appellate review, it is beyond the purview of this opinion to address any aspect of the claims against Godbout. The Appeals Court did not address the merits of the appeal with respect to Godbout, because, by its interpretation of the release, the premise of the malpractice claim against Godbout was eradicated. In light of our opinion, the Appeals Court's rationale for not addressing claims of error with respect to the verdict in favor of Godbout no longer applies. We take no action with respect to those issues, leaving it to Eck to petition the Appeals Court for a rehearing with respect to errors claimed on appeal that were not addressed in the Appeals Court's original decision.[6]

---

[6] That Eck did not seek further appellate review of the Appeals Court's decision does not preclude Eck from seeking rehearing in the Appeals Court with respect to the substantive claims of error that he pressed on his original appeal. Eck agreed with the Appeals Court's decision, and had, from the

*3. Conclusion.* We therefore affirm the entry of summary judgment in favor of defendant Lawrence Kellem.

*So ordered.*

---

outset, sought to pursue a claim against Kellem. He had sued Godbout for malpractice in connection with the drafting of the release only after the language of the release had been interpreted to release Kellem from liability. Eck had no reason to seek further appellate review. The Appeals Court's decision interpreted the release in a manner that allowed him to pursue his desired claim against Kellem, and only precluded him from pursuing his alternative claim against Godbout. We reject the notion that a party who is satisfied with a decision rendered by the Appeals Court must file some form of "protective" application for further appellate review to guard against the possibility that, on granting the other side's application, this court will make a ruling affecting some other aspect of the Appeals Court's decision. Ordinarily, when this court grants further appellate review, we review all issues that were before the Appeals Court. See *Commonwealth* v. *Lombard,* 419 Mass. 585, 593-594 & n.7 (1995); *Bradford* v. *Baystate Med. Ctr.,* 415 Mass. 202, 204-205 (1993), and cases cited. Our review is limited to a specific issue or issues only where, as here, our order allowing review states such a limitation. Eck had no way of knowing, in advance, that we would limit the scope of our review, and thus no reason to file a precautionary application for further appellate review to address the issues pertaining to his claim against Godbout.