McGuire, Thomas F., Jr., J.
The plaintiff, Debra Rich, and the defendant, Lesley Rich, are divorced from one another. Debra Rich alleges that Lesley Rich unlawfully intercepted and disclosed private electronic communications she sent on one of the family computers when the two resided together. The complaint asserts claims under the Massachusetts Wiretap Act, G.L.c. 272, §99, and the Massachusetts Privacy Act, G.L.c. 214, §1B.[1] The defendant has raised affirmative defenses including the statute of limitations, release of liability and privilege. The action was tried before the court, sitting without a jury.
FINDINGS OF FACT
Based on the credible evidence and inferences drawn from such evidence, the court finds the following facts.
Debra Rich and Lesley Rich were married to one another until they divorced in June 1987. After living apart for two years, the parties again resided together in Somerset from 1989 until 2003. Although they remained divorced, they resided together with their sons Jeremy and Justin in a home they both owned.
As of 2000, there were two computers in the home. A desktop computer was kept in ahorne office. A laptop computer was kept in the family room. All members of the family had access to the laptop. Lesley Rich established an account with America On Line for email and instant messaging services. Debra Rich had her own password to use the account. She did not provide the password to anyone. Unknown to her, the account retained all emails sent or received on the computer in a “personal file cabinet.” No password was needed to access the “personal file cabinet.”
In 2002, Lesley Rich purchased a computer program called, “key logger.” That program records all keystrokes typed into a computer. As a result, a person using the program can view all messages sent on the computer on which the program is installed. Lesley Rich wanted to use the program to determine whether employees at work were stealing from the company he managed. However, he also installed the key logger program on the parties’ home computers.
Both Lesley Rich and the parties’ son, Jeremy, testified at trial that Lesley Rich told all members of the family, including Debra, that he was installing the key logger program on the home computers in order to test it. The court credits that testimony but finds that the information was conveyed in a manner that was not sufficiently clear to alert a reasonable person, not well versed in the operation of computer programs, that every message sent on the computer would be recorded. The court finds that Debra Rich did not understand that every message she sent was saved and available to Lesley Rich and her children.
By 2003, Debra Rich had become secretly involved in an intimate relationship with an individual named Andrew Fisher. She used the laptop computer to exchange emails and instant messages with him. These messages included communications of a sexual nature.
In June of 2003, Lesley Rich discovered these communications through the key logger program and Debra Rich’s “personal file cabinet,” which retained her emails. When he read the messages he was shocked and asked Debra Rich what was going on. He. specifically asked about the sadomasochistic content of the messages. Debra Rich told him that she was involved with dangerous people and that he should not become involved. At that point, Lesley did not know Andrew Fisher’s identity.
That same month, Debra Rich told Lesley Rich that she was going on a trip with a female friend. Lesley Rich begged her not to go. Debra Rich went on the trip. By viewing messages sent by Debra, Lesley was able to determine that Debra actually went to the Cayman Islands with Andrew Fisher.
On her way back from the trip, Debra and Lesley spoke by telephone. Lesley asked Debra if she had fun with Andrew Fisher. Debra became hysterical and asked whether Lesley had arranged to have them followed.
The next morning, Debra asked Lesley how he knew about Andrew Fisher. Lesley informed her that, through use of the key logger program and her “personal file cabinet” he had read her emails, as well as her side of conversations sent by instant messaging. Debra became very upset. She began screaming and demanded that Lesley delete her messages. Lesley deleted the messages from the laptop screen, although they remained stored in the computer. Debra expressed concern for Andrew Fisher. Lesley told her that if she broke off the relationship, he would not tell Andrew’s wife, Robin Fisher, about the affair. Debra Rich moved out of the parties’ home later that month.
On September 10, 2003, the parties executed a document entitled, “Release and Amended Settlement Agreement.” The agreement amended the marital settlement agreement the parties entered into at the time of their divorce in 1987. Among other provisions, the agreement included the following general release:
Waiver and Release of the Parties. Les and Deb, on behalf of themselves and their partners, officers, directors, shareholders, trustees, beneficiaries, agents, attorneys, employees, parents, subsidiaries, affiliates, divisions, heirs and legal representatives, and the respective successors and assigns of *555 any of the foregoing (collectively, the “Releasors”), hereby irrevocably and unconditionally release and forever discharge each other and their partners, officers, directors, shareholders, trustees, beneficiaries, agents, attorneys, employees, parents, subsidiaries, affiliates, divisions, heirs and legal representatives, and the respective successors and assigns of any of the foregoing (collectively, the ’’Released Parties”), from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasors, or any of them, may have or which may hereafter be asserted or accrue against Released Parties, or any of them, resulting from or in any way relating to any act or omission done or committed by Released Parties, or any of them, prior to the date hereof (each, a “Claim”), including without limitation any right, claim, demand, action or cause of action under or related to the Divorce Agreement.
Exhibit 15, par. K.
On February 17, 2004, Lesley Rich wrote a letter to Robin Fisher, using the fictitious name “Helen Dworf-man.” He also used a false return address. Lesley Rich told Robin Fisher that her husband was engaging in numerous sadomasochistic relationships. Lesley Rich falsely stated that “Dworfman” discovered Andrew Fisher was in contact with “a young woman in our family who is underage, and prone to sexual fantasy.” Lesley Rich informed Robin Fisher that her husband used his computer “almost nightly” in connection with his “sexual escapades.” He claimed to have documentary evidence of this and invited Robin Fisher to contact “Dworfman” through an email account Lesley Rich established. The letter did not refer to Debra Rich or reveal the content of any of her messages.
Lesley Rich also wrote a letter, under the name, “Lorraine Sader,” to the board of directors of Cox Communications, where Andrew Fisher was president, exposing his activities. No evidence was introduced at trial as to the contents of that letter or whether it revealed any information contained in Debra’s emails and instant messages.
Lesley Rich also posed as a female named “Sarah” in order to communicate by email with Andrew Fisher about sexual activities. Those communications lasted a period of one to two months in 2004. Lesley Rich was able to contact Andrew Fisher through an email address he obtained using the key logger program on the laptop computer Debra Rich had previously used. No evidence was introduced that “Sarah” revealed any information gathered from Debra’s electronic communications with Andrew Fisher.
In 2006, Robin Fisher commenced divorce proceedings against Andrew Fisher in the Georgia Superior Court.
In 2007, Lesley Rich made a telephone call to Robin Fisher to inform her about Andrew Fisher’s infidelities. He concluded that she must not have received the “Dworfman” letter because she had not responded to it. No one testified at trial as to the contents of the telephone conversation between Lesley Rich and Robin Fisher. Based on the purpose for the call and the fact that Robin Fisher’s attorney deposed Lesley Rich in the divorce case a few weeks after the conversation, the court infers that Lesley Rich told Robin Fisher that he had evidence of Andrew Fisher’s infidelity. However, no evidence was presented at trial that Lesley Rich went further and informed Robin Fisher of the contents of Debra Rich’s emails and instant messages during that conversation.
Lesley Rich retained an attorney in Georgia who negotiated with Robin Fisher’s attorney regarding his deposition in the divorce case.[2] The parties negotiated an indemnification agreement under which Lesley Rich promised to appear for a deposition in the divorce case and further agreed to “cooperate with [Robin] Fisher throughout the duration of the Divorce and provide additional information or documentation if requested by [Robin] Fisher subsequent to the Deposition as long as [Lesley] Rich’s cooperation and/or [Robin] Fisher’s use of such videotape or testimony does not result in a violation of any laws.” Exhibit 10, par. 1. In return, Robin Fisher agreed to indemnify Lesley for damages and attorneys fees incurred as a result of “(a) any testimony [Lesley] Rich provides in connection with the Divorce, and (b) any documents or items that [Lesley] Rich produces in connection with the Divorce.” Exhibit 10, par. 2.
In July 2007, Lesley Rich testified at a deposition in the Georgia divorce case. A subpoena was served on him, through his attorney, who he had authorized to accept service. The subpoena required the production of electronic communications with the Fishers. Lesley Rich produced various items at the deposition in Georgia including the laptop computer used by Debra Rich and records of communications between Debra Rich and Andrew Fisher. Lesley Rich and Robin Fisher executed their indemnity agreement on the day of Lesley Rich’s deposition in the Fisher divorce case.
Prior to his deposition, Lesley Rich had not revealed the contents of Debra Rich’s emails and instant messages to anyone other than his own attorney. The court infers that either Lesley Rich told Robin Fisher directly, or Lesley Rich’s attorney told Robin Fisher’s attorney, that Lesley Rich possessed evidence of electronic communications with Andrew Fisher that would prove his infidelity. Otherwise, there would have been no reason for Robin Fisher to depose Lesley Rich in her divorce case.
In December 2007, Debra Rich testified at a deposition in connection with the Fishers’ divorce case. Robin Fisher’s attorney asked her numerous questions about her activities and communications with *556 Andrew Fisher, including matters she and Andrew Fisher had discussed in private emails and instant messages. One question pertained to her use of a dog collar as a sexual accoutrement. That was something she had discussed with Andrew Fisher in an instant message sent from the laptop computer. She had not discussed that subject with anyone else.
After 2007, Debra Rich found several anonymous “blog" postings on the internet regarding her relationship with Andrew Fisher. These postings included information discussed in her electronic communications with Andrew Fisher. They caused her severe emotional distress and damaged her reputation.
ANALYSIS
The plaintiff has asserted claims under the Massachusetts Wiretap Act, G.L.c. 272, §99, and the Massachusetts Privacy Act, G.L.c. 214, §1B.
1) The Wiretap Act
The Massachusetts Wiretap Act prohibits the interception of oral or wire communications, except pursuant to a duly issued warrant or in other limited circumstances. The Act provides in part:
Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by this section shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest. . .
G.L.c. 272, §99Q.
Lesley Rich contends that the Wiretap Act does not apply here because emails and instant messages do not qualify as “wire communications.” A “wire communication” is defined by the Act to mean:
[A]ny communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception.
G.L.c. 272, §99B(1).
Although this statute was enacted before email and instant messaging became popular, the language used is sufficiently broad to include those new technologies. “[T]he statutory language itself is the principal source of insight into the legislative purpose.” Commonwealth v. Smith, 431 Mass. 417, 421 (2000). ROPT v. Katin, 431 Mass. 601, 603 (2000) (“In interpreting statutes we use the plain language of the statute where the language is unambiguous”).
Lesley argues that the Massachusetts Wiretap Act should be construed to exclude electronic communications. He points out that the Massachusetts Act was rewritten in 1968 to incorporate the pertinent parts of the Federal Wiretap Act, 18 U.S.C.A. §2510 et seq., including the definition of “wire communication.” Massachusetts courts “construe the Massachusetts statute in accordance with the construction given the cognate Federal statute by the Federal courts.” O’Sullivan v. NYNEX Corp., 426 Mass. 261, 264 n.5 (1997). He also points out that the federal act was amended by the Electronic Communications Privacy Act of 1986, Pub.L., 99-508, §101, to cover the separate category of “electronic communication.” That term encompasses emails. United States v. Councilman, 418 F.3d 67 (2005). He concludes that prior to the 1986 amendment, the federal act did not include electronic communications and, therefore, the Massachusetts Act, which was never amended to explicitly include “electronic communication[s],” should be construed to exclude them.
That argument is not persuasive. The 1986 amendment to the federal act did not simply add a new category of “electronic communication[s]” to the Federal Wiretap Act. It also restricted the definition of “wire communication[s]” to “aural transferís],” which are further defined as “transferís] containing the human voice at any point between and including the point of origin and the point of reception.” 18 U.S.C.A. §2510(1) and (18). Thus, prior to the 1986 amendment, the federal definition of “wire communication” was broad enough to include non-aural communications, such as email.
Lesley also argues that the evidence does not warrant a finding that he “intercept[ed]” Debra’s messages with an “intercepting device.” To “intercept” a communication under the Massachusetts Act “means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication . . .” G.L.c. 272, §99B(4).
Lesley relies on federal cases that have construed the term “intercept” in the federal act narrowly to include only electronic messages while they are in transit and to exclude those messages while they are in “storage.” See, In Re Pharmatrak, Inc., 329 F.3d 9, 21-22 (1st Cir. 2003) (describing debate about whether interception requires acquisition of message contemporaneously with transmission). As in Pharmatrak, however, Lesley’s acquisition of Debra’s messages would constitute an interception even under the narrower definition. The key logger program Lesley installed recorded the messages as Debra typed them. Compare, Bailey v. Bailey, No. 07-11672, p. 8 (E.D.Mich. Feb. 6, 2008), relied on by Lesley, in which a key logger program was used only “to learn passwords, which were used to access and copy Plaintiffs email and messages.” Debra’s composition of the message was the first step in her communication. Thus, *557 Lesley “intercept[ed” her messages within the meaning of the state wiretap statute.[3]
Lesley also contends that the key logger program is not an “intercepting device.” An “intercepting device” is “any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication” with certain limited exceptions. G.L.c. 272, §99B(3). The key logger program is an “intercepting device” (at least when surreptitiously installed on a computer) because it “is capable of. . . recording a wire . . . communication.” Id.
Finally, the term “contents” of a communication is defined broadly to mean “any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication.” G.L.c. 272, §99B(5). Lesley clearly obtained the “contents” of Debra’s communications.
2) The Privacy Act
The Massachusetts Privacy Act provides:
A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith
to award damages.
G.L.c. 214, §1B.
“To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious . . . The plaintiff must show that there was a ‘gathering and dissemination of information which [she contends] was private.’ ” Nelson v. Salem State College, 446 Mass. 525, 536 (2006) (citations omitted). ‘The statute, essentially, proscribes ‘disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest.’ ” Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 383 (2005), quoting Bratt v. International Business Mach. Corp., 392 Mass. 508, 518 (1984).
3) Lesley Rich’s Acquisition of Information
Insofar as Debra Rich’s claims are based on Lesley Rich’s acquisition of the contents of her emails and instant messages, they are barred by the statute of limitations.
A claim for invasion of privacy is governed by the general statute of limitations for torts. Flynn v. Associated Press, 401 Mass. 776, 782 (1988). Finney v. MADICO, Inc., 42 Mass.App.Ct. 46, 52 (1997). That statute requires an action to “be commenced only within three years next after the cause of action accrues." G.L.c. 260, §2A.
The Wiretap Act, G.L.c. 272, §99, does not contain a limitations period. That does not mean that no limitations period applies. In such cases, the court looks “to the essential nature of the right to determine which statute of limitations should be applied.” Nantucket v. Beinecke, 379 Mass. 345, 347 (1979). The restrictions in the Wiretap Act are “designed to ensure that unjustified and overly broad intrusions on rights of privacy are avoided.” Commonwealth v. Vitello, 367 Mass. 224, 231 (1975). Therefore, the same three-year statute of limitations that applies to other claims for invasion of privacy should apply to claims under the Wiretap Act.
Debra Rich knew that Lesley Rich had obtained the contents of her emails and instant messages in June of 2003. She did not file this action until October 26, 2007, which was well over four years later. Thus, any claim under either the Privacy Act or the Wiretap Act for the acquisition of those messages is time-barred.
Even if those claims were not barred by the statute of limitations, they would be barred by the release of liability Debra signed in September 1993. In that document, Debra “irrevocably and unconditionally release[d] and forever discharge^]” all claims against Lesley “resulting from or in any way relating to any act or omission done or committed” by Lesley prior to September 10, 1993. The fact that the release also refers specifically to claims under the parties’ prior divorce agreement does not limit the scope of the release. “[A] release may be prompted by the settlement of a specific dispute or resolution of a specific issue, but broad wording in the release operates to settle all other, unrelated matters, even if they were not specifically in the parties’ minds at the time the release was executed.” Eck v. Godbout, 444 Mass. 724, 728 (2005).
Debra contends that the release is unenforceable. The burden of proving that the release was invalid was on her. Costello v. Hayes, 249 Mass. 349, 353 (1924). She has not carried that burden. There was no evidence of coercion, fraud, or incapacity.
Debra cites no authority for her argument that the agreement is unenforceable because it was not approved by the Probate Court. It is true that “a separation agreement is a judicially sanctioned contract’ that is valid and enforceable only if and as approved by the judge.” Kropf v. Kropf, 439 Mass. 97, 104 (2005), quoting Bell v. Bell, 393 Mass. 20, 26 (1984) (Abrams, J., dissenting). However, the court is not aware of any reason (and Debra has not offered any) why two divorced individuals may not agree to modify their rights by agreement, especially where the modification is based on developments that have occurred since the divorce and there is no claim that the new agreement is unfair.
Debra also contends that the release is unenforceable because Lesley breached the parties’ amended settlement agreement by failing to establish a trust, which is referred to in paragraph F of the document. However, paragraph F provides that Lesley give a promissoiy note that “shall be paid into a trust fund, which shall be established at the time of any such payment. . .” Exhibit 15, par. F. The document does *558 not say who is to establish the trust. Since the beneficiaries of the trust are both Lesley and Debra, either or both of them could establish the trust. In any case, the agreement provides that the trust shall be established when the promissory note is paid.[4] Under paragraph F, the promissory note is not due until either the house in Somerset is sold “to an unrelated third party” or at Lesley’s death, whichever occurs earlier. Since neither of those things has occurred, Lesley could not have breached the agreement by failing to establish the trust.
4) Lesley Rich’s Disclosure of Information
Lesley Rich disseminated information obtained from Debra Rich’s emails and instant messages in two ways.[5] First, he conveyed to Robin Fisher or her attorney the fact that evidence regarding Andrew Fisher’s activities existed in the form of electronic messages in his possession. It is unclear whether this was done directly in his telephone conversation with Robin Fisher or indirectly through counsel. However it may have been accomplished, the fact that the information was conveyed is evidenced by the subsequent negotiations regarding his deposition and the indemniiy agreement, as well as the items requested in the subpoena issued to him for that deposition. Second, Lesley Rich disclosed the contents of the emails and instant messages themselves at his deposition.
Debra Rich’s claims for both of these disclosures is barred by the so-called “litigation privilege.” That doctrine provides a defendant with immunity from suit.[6] The litigation privilege has been described as follows:
Written or oral communications made by a parly, witness, or attorney prior to, in the institution of, or during and as part of a judicial proceeding involving said party, witness, or attorney are absolutely privileged even if uttered maliciously or in bad faith.
Mass. G. Evid., Art. V, Intro. Note §(h)(l) (2010), citing Correllas v. Viveiros, 410 Mass. 314, 319-21 (1991), and Sriberg v. Raymond, 370 Mass. 105, 108 (1976). “The reason for the privilege is that it is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy.” Aborn v. Lipson, 357 Mass. 71, 72 (1970). Fisher v. Lint, 69 Mass.App.Ct. 360, 366 (2007).
This privilege most often arises in cases of defamation. However, it applies in other contexts as well. “A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort.” Correllas, supra at 324 (applying privilege in claim for intentional infliction of emotional distress). The Restatement of Torts, Second, states the general rule that the absolute privilege applicable in cases of defamation applies “to the publication of any matter that is an invasion of privacy." Restatement (Second) Torts, §652F. See also, Alperin, Summary of Basic Law, §17.35 (“Actions for invasion of privacy are subject to the defense of privilege”). Thus, the absolute privilege applies to Debra’s claims under both the Privacy Act and the Wiretap Act.
Robin Fisher filed her divorce action in 2006. By the time Lesley Rich contacted her about the electronic correspondence between her husband and Debra Rich, the action was pending. Further, Lesley Rich’s disclosures were pertinent to the divorce proceeding. Lesley Rich is therefore immune from any liability based on these disclosures.
ORDER
Judgment shall enter in favor of the defendant, Lesley Rich, and against the plaintiff, Debra Rich, on Counts I, II and III of the complaint.

 Count I of the complaint seeks damages under Subsection C of the Wiretap Act, which provides for criminal penalties. At best, it is duplicative of Count II, which seeks damages under Subsection Q of that Act. Count III alleges a violation of G.L.c. 214, §1B. Counts IV through VIII of the complaint, alleging violations of Rhode Island law, were previously dismissed by the court (Moses, J.) on Lesley Rich’s motion for summary judgment. (Paper #34.) The final count of the complaint, Count IX, seeks injunctive relief as a remedy for violation of the Massachusetts Wiretap Act and Rhode Island law. At trial, the parties agreed to bifurcate the issues of punitive damages and attorneys fees.

Lesley Rich is a member of the Massachusetts and Rhode Island bars.

Lesley’s accessing Debra’s emails in her “personal file cabinet” was not contemporaneous with transmission and therefore would not constitute interception if the state act were construed to include a “real time” requirement. However, it does not appear that Lesley gained any additional information from the stored emails that he did not obtain through use of the key logger.

The promissory note, which is signed by Lesley and attached to the amendment, provides that the proceeds of the note “shall be paid into a trust fund, which shall be established at the time of any such payment.” Notices to the payee are to be given to Debra. Exhibit 15, Attached Note.

Lesley Rich, under the alias, “Helen Dworfman,” informed Robin Fisher of Andrew’s infidelity in a letter of February 17, 2004. Using the alias, “Lorraine Sader,” he contacted the board of directors of Andrew Fisher’s employer about his activities. He also used the alias, “Sarah,” to communicate with Andrew Fisher himself. There was no evidence that Lesley disclosed the contents of the emails or instant messages in any of those communications. Debra Rich makes no argument that Lesley “used” the information obtained from those electronic messages to make these contacts in violation of the Wiretap Act. G.L.c. 272, §99Q.

Debra Rich does not contend the law of Georgia differs from that of Massachusetts. There is therefore no need to engage in a conflict of laws analysis. Mass.R.Civ.P. 44.1.